GREEN | EVANS-SCHROEDER, PLLC
130 W. Cushing Street
Tucson, AZ 85718
Tel. (520) 882-8852
Fax (520) 882-8843

Matthew Green (Arizona Bar No. 020827)
Email: matt@arizonaimmigration.net
Jesse Evans-Schroeder (Arizona Bar No. 027434)
Email: jesse@arizonaimmigration.net
Ami Hutchinson (Arizona Bar No. 039150)
Email: ami@arizonaimmigration.net
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

A.M.A.S.,
Plaintiff,

v.

Markwayne Mullin, in his official capacity, Secretary of the Department of Homeland Security;

David Venturella, in his official capacity, Acting Director for U.S. Immigration and Customs Enforcement;

Todd Blanche, in his official capacity, U.S. Attorney General;

Marco Rubio, in his official capacity as Secretary of State;

U.S. Department of Homeland Security;

U.S. Department of State;

United States of America,

Defendants.

Case No. TBD

**EMERGENCY MOTION FOR A TEMPORARY INJUNCTION**

<u>Challenge to Unlawful Removal; Request for Declaratory and Injunctive Relief</u>

# NOTICE OF MOTION

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, Petitioner A.M.A.S. moves this Court for an order that Respondents be directed to facilitate his return to the United States. Petitioner has provided a copy of his Complaint and Emergency Motion for Temporary Injunction to Brooks Chupp, the Assistant U.S. Attorney who entered his appearance in the related case: 2:26-cv-02888.

WHEREFORE, Petitioner prays that this Court grant his request for a preliminary injunction requiring Defendants to facilitate his return to the United States.

Dated: September 15, 2026

Respectfully Submitted,

/s/Jesse Evans-Schroeder
Attorney for Petitioner-Plaintiff

## TABLE OF CONTENTS

NOTICE OF MOTION ........ ii
I. STATEMENT OF FACTS AND CASE ........ 1
PETITIONER WARRANTS A PRELIMINARY INJUNCTION BECAUSE HE IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIMS, AND HE SUFFERS IRREPARABLE INJURY EACH DAY HE REMAINS IN EQUATORIAL GUINEA ........ 4
A. Petitioner is Likely to Succeed on the Merits of His Claims. ........ 4
The Court should grant the requested relief because Petitioner is likely to succeed on the merits of his claims, as outlined below. ........ 5
B. Petitioner Will Suffer Irreparable Harm Absent Injunctive Relief. ........ 9
C. The Balance of Equities and the Public Interest Favor Granting the Temporary Restraining Order. ........ 10
II. REQUIREMENTS OF FRCP 65(b) ........ 11
III. CONCLUSION ........ 11

## TABLE OF AUTHORITIES

Cases

*Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) ........ 10
*D.A. v. Noem*, 800 F. Supp. 3d 43, 46-48 (D.D.C. 2025) ........ 8
*Elrod v. Burns*, 427 U.S. 347, 373 (1976) ........ 10
*Emigdio-Neri v. Blanche*, 2026 WL 1349067, at *1 (S.D. Cal. May 14, 2026) ........ 5
*Guzman Chavez v. Hott*, 940 F.3d 867, 879 (4th Cir. 2019) ........ 7
*J.G.G. v. Trump*, 772 F. Supp. 3d 18, 42 (D.D.C. 2025) ........ 10
*Luu v. Bowen*, No. 5:25-CV-03145-MEMF-SP, 2025 WL 3552298, at *10 (C.D. Cal. Dec. 11, 2025) ........ 11
*Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ........ 10
*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 661 (2007) ........ 6
*Nken v. Holder*, 556 U.S. 418, 436 (2009) ........ 11

*Osahon v. Mullin, et al.,* 2026 WL 2549054 (C.D.Cal. Aug. 28, 2026).................................... 1, 5
*reminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005)............................................................ 11
*Rodriguez v.Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) ........................................................ 11
*See Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 509 (D. Md. 2025) .................................. 9, 10
*see also Musaeva v. Cantu*, No. CV-25-04529-PHX-MTL (ASB), 2026 WL 172026, at *1 (D. Ariz. Jan. 22, 2026)........................................................................................................... 5
*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ...................................... 10, 11

Other Authorities

*"You Have Arrived in Hell": Torture and Other Abuses Against Venezuelans in El Salvador's Mega Prison*, Hum. Rts. Watch & Cristosal (Nov. 12, 2025) ..................................................... 8
Eileen Sullivan et al., *Trump Wants to Make Deportation Deals. Autocrats Are Ready to Listen*, N.Y. Times (Apr. 4, 2026)....................................................................................................... 8
Gerald Imray, *Court Rules in Favor of 4 Men Deported by the US to Africa and Denied Lawyer Meetings for 9 Months*, AP News (Apr. 10, 2026) ........................................................... 8

Petitioner moves for a temporary restraining order and preliminary injunction requiring Defendants to facilitate A.M.A.S.'s return to the United States. A.M.A.S. is presently in a prison in Equatorial Guinea, the country to which Defendants removed him without any form of process, and where he has been subjected to torture due to his refusal to be refouled to Egypt, where he will be tortured, and his efforts speaking out about conditions of the deportees to the American press. Defendants knew or should have known that Equatorial Guinea would pressure A.M.A.S. to return to Egypt, and failing that, would then imprison, persecute, and torture him based on his refusal. Defendants also removed A.M.A.S. to Equatorial Guinea knowing that he would have no lawful status there and that he lacked any identity documents.

Plaintiff meets the standard for a preliminary injunction. *See Osahon v. Mullin, et al.,* 2026 WL 2549054 (C.D.Cal. Aug. 28, 2026) (granting a temporary restraining order in similar circumstances and directing Defendants to facilitate the return of the Plaintiff from a third country removal). A.M.A.S. has a likelihood of success on the merits because Defendants removed him to Equatorial Guinea without due process and in violation of the statutory and regulatory scheme governing deferral of removal under the Convention Against Torture ("CAT"). He will continue to suffer immediate and irreparable harm, including torture and death, stemming from that removal in absent an order from this Court directing the government to facilitate his return. Since holding federal agencies accountable to constitutional demands is in the public interest, the balance of equities and public interest are also strongly Petitioner's favor.

## I. <u>STATEMENT OF FACTS AND CASE</u>

On April 24, 2026, Plaintiff A.M.A.S. filed a petition for habeas corpus on before this Court.[1] Before the Court could rule on the petition, and the subsequently filed Temporary Restraining Order to prevent his third country removal without being afforded a reasonable fear interview, A.M.A.S. was forcibly removed to Equatorial Guinea on ___, and was not afforded any opportunity to demonstrate a fear of removal to Equatorial Guinea, despite repeatedly requesting a reasonable fear interview. Ex. A (A.M.A.S. statement regarding his removal originally filed in the first habeas petition proceedings). Since arriving in Equatorial Guinea and being turned over by U.S. authorities to the custody of Equatorial Guinean authorities, A.M.A.S. has been heavily guarded by Equatorial Guinea authorities at a decommissioned hotel. Ex. B (Kate O'Donnell affidavit) at ¶4; *see also* Ex. C (collected news articles).

On May 12, 2026, the government responded to A.M.A.S.'s removal by submitting a declaration from Vu Cam, the "Acting Unit Chief (UC), Removal Management Division (RMD), RIO (Removal International Operations), Africa, Enforcement and Removal Operations (ERO), U.S. Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS)[.]" 2:26-cv-02888, Docket entry 15-1 at ¶1. In that sworn declaration, Mr. Cam claimed that "Equatorial Guinea provided diplomatic assurances that the aliens removed from the United States pursuant to the Third Country Removal agreement will not be subjected to persecution or torture" and that the Department of State "determined that the diplomatic assurances were credible." *Id.* at ¶¶5-6. He also claimed

[1] Plaintiff hereby incorporates by reference the facts laid out in the initial habeas corpus petition. Docket No. 2:26-cv-02888.

that "ICE [sic] will followed the March 30, 2025 memorandum *Guidance Regarding Third Country Removals* to effectuate the Petitioner's removal." *Id.* at ¶8.[2]

Throughout his guarded confinement at the hotel, Equatorial Guinean authorities beat A.M.A.S., held him at gunpoint and threatened to kill him, and took away his phone and internet to prevent him from reporting the conditions within the country and the hotel. Ex. B and C. Instead, A.M.A.S. bravely relayed his story to reporters in order to advocate for himself and his fellow hostages. His last messages to Ms. O'Donnell indicated he intended to continue speaking out publicly about the treatment he, and his fellow hostages, experienced in Equatorial Guinea. Ex. B at ¶4, o.

On September 11, 2026, A.M.A.S.'s counsel was made aware that he was arrested. Ex. B at ¶5. Counsel for A.M.A.S., Kate O'Donnell, has heard firsthand accounts of the events surrounding A.M.A.S.'s arrest. Equatorial Guinean police placed hoods on both A.M.A.S. and a fellow hostage in the hotel, beat and tortured them in front of the other hostages, and threatened all that they would be killed if they continued to speak with reporters. Ex. B at ¶7. A.M.A.S. and the second hostage were then placed in an unknown prison where they were denied food and water. *Id.* Although the guards allowed A.M.A.S. to place a phone call to his sister asking for her to wire $500 to bribe the guards, she believed her brother did not sound like himself. Ex. B at ¶6.

---

[2] Notably, however, Mr. Cam admitted that A.M.A.S.'s "placement on the manifest for this charter served as the travel document in the Petitioner's removal." *Id.* at ¶7. This corroborates A.M.A.S.'s statement indicating that his passport was not returned to him, and he was never served with any formal notification of the specific country identified for his third country removal. Ex. A.

As of today, September 15, 2026, A.M.A.S.'s counsel have not heard from him since 10, 2026. Ex. B at ¶4, o. The last proof of life communication from A.M.A.S. occurred when he called his sister on or about September 11 and 12, 2026. *Id.* at ¶6.

## LEGAL STANDARD

Petitioner is entitled to preliminary injunctive relief if he establishes that he is "likely to succeed on the merits, . . . likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Even if Petitioner does not show a likelihood of success on the merits, the Court may still grant relief if he raises "serious questions" as to the merits of his claims, the balance of hardships tips "sharply" in his favor, and the remaining equitable factors are satisfied. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011). As shown below, Petitioner overwhelmingly satisfies both standards.

## ARGUMENT

### PETITIONER WARRANTS A PRELIMINARY INJUNCTION BECAUSE HE IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIMS, AND HE SUFFERS IRREPARABLE INJURY EACH DAY HE REMAINS IN EQUATORIAL GUINEA

Petitioner should prevail on this motion because he is likely to succeed on the merits of his claims, likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tips in his favor, and an injunction is in the public interest.

### A. Petitioner is Likely to Succeed on the Merits of His Claims.

The Court should grant the requested relief because Petitioner is likely to succeed on the merits of his claims, as outlined below.

As an initial matter, A.M.A.S.'s removal did not moot his constitutional and statutory claims as raised in the complaint. *Osahon,* 2026 WL 2549054 at *5; *Emigdio-Neri v. Blanche*, 2026 WL 1349067, at *1 (S.D. Cal. May 14, 2026); *see also Musaeva v. Cantu*, No. CV-25-04529-PHX-MTL (ASB), 2026 WL 172026, at *1 (D. Ariz. Jan. 22, 2026) (dismissing remaining claims without prejudice to allow petitioner to re-file such claims as a civil rights complaint).

Under the INA, Respondents have a clear and non-discretionary duty to execute final removal orders only to the designated country of removal. The statute explicitly states that a noncitizen "*shall* remove the [noncitizen] to the country the [noncitizen] . . . designates." 8 U.S.C. § 1231(b)(2)(A)(ii) (emphasis added). And even where a noncitizen does not designate the country of removal, the statute further mandates that DHS "shall remove the alien to a country of which the alien is a subject, national, or citizen. *See id.* § 1231(b)(2)(D); *see also generally Jama v. ICE*, 543 U.S. 335, 341 (2005).

As the Supreme Court has explained, such language "generally indicates a command that admits of no discretion on the part of the person instructed to carry out the directive," *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 661 (2007) (quoting *Ass'n of Civilian Technicians v. Fed. Labor Relations Auth.*, 22 F.3d 1150, 1153 (D.C. Cir. 1994)); *see also Black's Law Dictionary* (11th ed. 2019). Petitioner is the subject of a removal order, but he cannot be removed to Egypt based on the grant of CAT protection.

Moreover, before removal to any third country, ICE must provide Petitioner with sufficient notice and an opportunity to respond and apply for fear-based relief as to that country. There is no dispute in this case that this did not happen here. *See* 2:26-cv-02888, Docket entry 15-1. Indeed, DHS affirmatively stated that A.M.A.S. was removed to Equatorial Guinea based on nebulous (and undisclosed) "diplomatic assurances." *Id.* As it turns out, those alleged "credible" assurances were not credible at all. *See* Ex. A-C. Defendants' conduct squarely violates the INA because it does not take into account, *or even mention*, an individual's designated country of removal, thus violating U.S.C. § 1231(b)(2)(A)(ii), which states that DHS must only remove an individual to the designated country of removal. Further, the policy plainly violates the United States' obligations under the Convention Against Torture and principles of due process because it allows DHS to provide individuals with *no notice whatsoever* before removal to a third country, so long as that country has provided "assurances" that deportees from the United States "will not be persecuted or tortured." *Id.* Clearly, Defendants' policy and actions violated various laws, including the Convention Against Torture, which instructs that the United States cannot remove individuals to countries where they will face torture, because the policy allows DHS to swiftly remove noncitizens to countries where they very well may face torture if those countries simply provide the United States with "assurances" that deportees will not be tortured. *Id.*

Furthermore, Defendants were prohibited by law from removing A.M.A.S. to a third country that would likely force him to be refouled to Egypt, where an immigration judge already determined A.M.A.S. would likely be tortured.

Third-country removal is permitted under 8 U.S.C. § 1231(b)(2), but like all removal, it is subject to the requirements of procedural due process. As the Fourth Circuit has explained, "precisely because withholding of removal is country specific, as the government says, if a noncitizen who has been granted withholding as to one country faces removal to an alternative country, then []he must be given notice and an opportunity to request withholding of removal to that particular country." *Guzman Chavez v. Hott*, 940 F.3d 867, 879 (4th Cir. 2019), r*ev'd on other grounds*, 594 U.S. 523 (2021). The statute and its implementing regulations provide limits. Section 241(b)(3)(A) of the INA prohibits DHS from removing a noncitizen to a country when the "Attorney General decides that the [noncitizen]'s life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). And the Foreign Affairs Reform and Restructuring Act prohibits removing a noncitizen to a country where "it is more likely than not that he or she would be tortured if removed [there]." 8 C.F.R. § 208.16(c)(2); see also Pub. L. No. 105–277, § 2242.And yet, the other regular chain refoulement accompanying other third country removals to Africa that had already occurred before A.M.A.S. was removed, Defendants refused to change course. *See, e.g.*, Pranav Baskar & Hamed Aleaziz, U.S. Deports Nine Migrants in Secret, Ignoring Legal Protections, N.Y.Times, Feb. 14, 2026, https://www.nytimes.com/2026/02/14/world/africa/us-secret-deportation-cameroon.html (stating that Cameroon imprisoned U.S. deportees upon arrival and intends to keep them in prison until they agree to return to their home country, despite the fact that they

received protection from removal to their home countries in the United States). As one former ICE official told the New York Times, "Sending people to a third country where they are coerced into deportation to the country that we cannot deport them to is flatly illegal." *Id.*; *see also* Eileen Sullivan et al., *Trump Wants to Make Deportation Deals. Autocrats Are Ready to Listen*, N.Y. Times (Apr. 4, 2026); Appx.251-52, 329, 333, 337, 341, 345-59, 361-62, 365, 372, 377, 441, 443; *"You Have Arrived in Hell": Torture and Other Abuses Against Venezuelans in El Salvador's Mega Prison*, Hum. Rts. Watch & Cristosal (Nov. 12, 2025); *D.A. v. Noem*, 800 F.Supp.3d 43, 46-48 (D.D.C. 2025); Gerald Imray, *Court Rules in Favor of 4 Men Deported by the US to Africa and Denied Lawyer Meetings for 9 Months*, AP News (Apr. 10, 2026); *see also* Amici Brief of Center for Gender and Refugee Studies et al. The refoulement has continued regularly since. Importantly, despite previous diplomatic assurances in other third country removals, deportees have been effectively imprisoned or refouled to the country from which they had established a likelihood of persecution and/or torture. *See, e.g.*, https://www.micat.gov.lr/media/press-releases/liberia-announces-humanitarian-arrangement-united-states; *see also* https://www.hrw.org/report/2026/05/27/casting-us-aside-to-die/cuban-and-other-third-country-nationals-deported-from-the.

Indeed, the present situation is not dissimilar to that of the government's conduct towards Kilmar Abrego Garcia. *See Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 509 (D. Md. 2025) ("ICE forcibly transported Abrego Garcia to the Terrorism Confinement Center ('CECOT') in El Salvador, a notorious supermax prison known for widespread human rights violations."). It has selected countries notorious for human rights abuses

and instability—most notably El Salvador, South Sudan, Eswatini, the DRC, Equatorial Guinea, and now Liberia—for third-country removal arrangements while calling these countries "safe" for deportees. But that claim is belied by the way the government has publicly broadcast those removals to demonize and dehumanize the individuals involved and strike fear in the immigrant community to send a message of retribution and deterrence. *See Nguyen*, 796 F. Supp. 3d at 734 (quoting President Trump stating that "[i]llegal aliens who stay in America face punishments, including significant jail time, enormous financial penalties, confiscation of all property, garnishment of all wages, imprisonment and incarceration, and sudden deportation in a place and manner solely of our discretion"). The outcome should be the same as in Abrego-Garcia's case: the Court should order Defendants to facilitate A.M.A.S.'s return to the United States. *See also Osahon,* 2026 WL 2549054 at *7 (citing *Abrego Garcia,* 777 F.Supp.3d at 516) (finding that the government effectively "concede[d] – through their failure to raise any evidence or argument in opposition to the TRO Application – that they violated each and every regulation cited herein.") Accordingly, A.M.A.S. has established a likelihood of success on the merits.

**B. Petitioner Will Suffer Irreparable Harm Absent Injunctive Relief.**

Petitioner will suffer irreparable harm were he to remain trapped and imprisoned in Equatorial Guinea. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (*quoting Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

As the exhibits demonstrate, A.M.A.S. has already been subjected to confinement for several months by the Equatorial Guinean government; he has been held at gunpoint and threatened regularly with death; and now he has been tortured and jailed. Ex. B and C. He may well be facing death. This is the very essence of irreparable harm. *Garcia*, 777 F. Supp. 3d at 518 ("Obviously, the risk of torture, beatings, and even death clearly and unequivocally supports a finding of irreparable harm.") (*quoting J.G.G. v. Trump*, 772 F. Supp. 3d 18, 42 (D.D.C. 2025)).

**C. The Balance of Equities and the Public Interest Favor Granting the Temporary Restraining Order.**

Finally, a preliminary injunction is in the public interest. First and most importantly, "it would not be equitable or in the public's interest to allow [a party] . . . to violate the requirements of federal law, especially when there are no adequate remedies available." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (quoting *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013)). If a preliminary injunction is not entered, "The public interest and the balance of the equities favor 'prevent[ing] the violation of a party's constitutional rights.'" *Ariz. Dream Act Coal.*, 757 F.3d at 1069 (quoting *Melendres*, 695 F.3d at 1002); *cf. Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

Although Defendants have an interest in enforcing the nation's immigration laws, the balance of equities and the public interest factors tip in favor of Plaintiff because he is challenging Defendants' likely violation of federal laws. *See Valle del Sol Inc. v. Whiting*,

732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] ... to violate the requirements of federal law." (citations omitted)); *Luu v. Bowen*, No. 5:25-CV-03145-MEMF-SP, 2025 WL 3552298, at *10 (C.D. Cal. Dec. 11, 2025) (" 'Public interest  concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.'" (*quoting Preminger*, 422 F.3d at 826); *see also Rodriguez v.Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (noting that the government "cannot suffer harm from an injunction that merely ends an unlawful practice"). And "[o]f course there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken v. Holder*, 556 U.S. 418, 436 (2009); *Garcia*, 777 F. Supp. 3d at 519.

## II. REQUIREMENTS OF FRCP 65(b)

In compliance with Fed. R. Civ. P. 65(b)(1), Petitioner certifies that prior notice of this motion to counsel for Respondents should not be required because: (1) as the associated complaint was only recently filed, no attorney has entered a notice of appearance for Respondents as of the time of this filing; (2) because Plaintiff is presently in dire straits in a situation that Defendants actively placed him in, Petitioner has shown that immediate and irreparable injury, loss, or damage will result to him before Defendants can be heard in opposition.

## III. CONCLUSION

For these reasons, Plaintiff warrants a preliminary injunction requiring that Defendants facilitate his return to the United States.

Dated: September 15, 2026

Respectfully submitted,

s/ Jesse Evans-Schroeder
Attorney for Petitioner