TIMOTHY COURCHAINE
United States Attorney
District of Arizona
DEREK FARALDO
Assistant United States Attorney
Arizona State Bar No. 037026
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4449
Telephone: (602) 514-7500
Fax: (602) 514-7760
Email: derek.faraldo@usdoj.gov
*Attorneys for Respondents*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

A.M.A.S., *et al.*,

Petitioners,

vs.

Markwayne Mullin, *et al.*,

Respondents.

No. CV-26-06601-PHX-JCH

**RESPONSE TO MOTION FOR TEMPORARY INJUNCTION**

## I. <u>INTRODUCTION.</u>

Pursuant to the Court's order issued on September 22, 2026 (Doc. 7), Respondents hereby file this response to Petitioner's Motion for Temporary Injunction (Doc. 2) ("Motion").

"[W]hen [the Supreme] Court issues a decision, it constitutes a precedent that commands respect." *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 606 U.S. —, 2025 WL 2415669, at *4 (U.S. Aug. 21, 2025) (Gorsuch, J., concurring in part and dissenting in part). This includes stay decisions, which "squarely control[]" in "like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025).

Petitioner's Motion for a Temporary Injunction (Doc. 2) and Compliant (Doc. 1) are a misguided attempt to circumvent an order from the Supreme Court in *D.V.D.*—which is

plainly a "like case[]"—and impermissibly interfere with the Executive Branch's plenary authority to conduct the nation's relations with foreign governments. Respondents maintain that Petitioner was removed in accordance with the third-country removal procedures that the Supreme Court in *D.V.D.* permitted to take effect pending litigation over their sufficiency and legality. Pursuant to those procedures, Respondents secured the appropriate diplomatic assurances regarding Equatorial Guinea's treatment of Plaintiffs. Those assurances are not reviewable and even if they were, Petitioner's claims here are effectively challenging *Equatorial Guinea's* compliance with those assurances. Petitioner has not substantiated their claims that Equatorial Guinea's will wholly fail to abide by their obligations, but, regardless, such claims provide no basis for judicial relief. Respondents complied with the applicable procedures; this court is precluded from second-guessing the government's determination that a foreign state's assurances are sufficient and reliable; the removals were thus entirely lawful; and the court obviously cannot grant any relief against Equatorial Guinea. The TRO and Complaint should be denied or dismissed. Even though the First Circuit recently issued a decision in *D.V.D.* on September 18, 2026, affirming the district court's declaratory judgment, this Petitioner was removed before that date the First Circuit's stay pending appeal remains in effect until the issuance of the mandate so district courts should not be issuing individual relief outside of this class. Indeed, issuing relief outside the class undermines the entire purpose of Rule 23(b)(2) class actions and the principle of *res judicata*. In other words, Petitioner is only entitled to the relief through the class action; this is not the appropriate venue for Petitioner to seek relief.

**<u>Background</u>**

The Immigration and Nationality Act ("INA") creates a hierarchy of countries to which a person ordered removed may be sent. *See* 8 U.S.C. § 1231(b). First, if an alien is arrested "while entering the country," they must be removed to the country from which they entered. *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153, 2154 (2025) (Sotomayor, J., dissenting from grant of stay) (citing 8 U.S.C. § 1231(b)(1)(A)). If that country will not accept the alien, the government may remove them to any country of which they are a "citizen subject, or

national;" the country in which they were born; or any country in which they reside. 8 U.S.C. § 1231(b)(1)(C)(i)–(iii). If removal to all of these countries would be "impracticable, inadvisable, or impossible," the government may remove an alien to any country that will agree to accept them. 8 U.S.C. § 1231(b)(1)(C)(iv).

In 1998, through the passage of the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), the United States implemented a multinational treaty intended to provide protection to those aliens who may be removed from the United States. *D.V.D.*, 145 S. Ct. at 2154 (Sotomayor, J., dissenting from grant of stay) (citing Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U. N. T. S. 113. ("CAT")). CAT specifically prohibits any signatory nation from removing a person "to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." *Id.* FARRA directed the Executive Branch to implement CAT through regulation, and the Executive Branch promptly complied. *See* 8 C.F.R. § 208.18. FARRA stated that "[i]t shall be the policy of the United States not to . . . effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." FARRA § 1242(a). However, FARRA made clear that this policy statement was not judicially enforceable, and that the Executive Branch alone had authority to effectuate CAT. FARRA § 1242(d) ("Notwithstanding any other provision of law, and except as provided in the regulations . . . no court shall have jurisdiction to review the regulations adopted to implement this section, and nothing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the Convention or this section, or any other determination made with respect to the application of the policy set forth in subsection (a), except as part of the review of a final order of removal.").

On March 30, 2025, the Department of Homeland Security ("DHS") issued guidance that established a two-pronged approach for removals to the countries "that had not previously been designated as the country of removal;" in essence, a country described in Section 1231(b)(1)(C)(iv). *See* Guidance Regarding Third Country Removals, attached as Exhibit A.

If the government intends to remove an alien to a third country, "DHS must determine whether that country has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured." *Id.* If the country has provided such assurances, the Department of State must determine whether it believes that the assurances are credible. *See id*. If the Department of State ("DOS") determines that the assurances are credible, DHS may remove an alien to that country "without the need for further procedures." *Id.* at 1–2. If the country has made no assurances, or if the DOS does not find the assurances credible, DHS must provide the alien with notice of the country of removal and an opportunity to claim fear of removal to that country. *Id.* at 2. If the alien claims a fear, they must be referred to U.S. Citizenship and Immigration Services ("USCIS") to determine whether the alien can establish a likelihood that they would qualify for withholding of removal from that country. *Id.* If USCIS determines that the alien can do so, USCIS will refer the matter to an immigration judge for further proceedings; if not, the alien may be removed to that country. *Id.*

Shortly before this guidance was promulgated, four aliens filed a class-action lawsuit in the District of Massachusetts seeking an order that DHS must provide *all* aliens facing deportation with notice and an opportunity to challenge removal. *D.V.D. v. United States Dep't of Homeland Sec.*, No. 25-10676-BEM, 2026 U.S. Dist. LEXIS 38553, at *5 (D. Mass. Feb. 25, 2026) ("*D.V.D. II*"). On April 18, 2025, the *D.V.D.* court certified a class under Fed. R. Civ. P. 23(b)(2) ("Rule 23(b)(2)") of all aliens who were then and would be thereafter subject to removal to a third country:

> All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed

*D.V.D. v. United States Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 378, 394 (D. Mass.

Apr. 18, 2025) ("*D.V.D. I*").[1]

On February 25, 2026, the *D.V.D.* court granted summary judgement in favor of the plaintiffs, declaring that the Due Process Clause requires notice of the country to which a person is to be removed and an opportunity to challenge removal to that country. *See id.* at *100–01. The government timely appealed and sought a stay from the First Circuit pending appeal; the stay was granted on March 16, 2026. *D.V.D v. United States Dep't of Homeland Sec.*, No. 26-1212 (1st Cir. Mar. 16, 2026).

Contrary to Petitioner's claims, the government has in fact implemented procedures to protect his interest. First, under the March 30th guidance, the government cannot remove an alien to a country absent credible assurances that nobody will be tortured if removed there or an individual hearing. Ex. A at 2. While Petitioner may (and does) claim that the procedures in place are inadequate, he cannot reasonably claim that there are *none*.

But the Motion faces a more concrete procedural barrier. Petitioner seeks functionally identical relief to the relief sought in *D.V.D.*, and he is clearly a member of the Rule 23(b)(2) class certified in *D.V.D. I*. If the *D.V.D.* court, as reviewed by the First Circuit and Supreme Court, ultimately rules in favor of Petitioner, he will be entitled to share in the relief ordered; if the *D.V.D.* court rules in favor of the defendants, Petitioner's claim will be extinguished permanently, and he will have no right to pursue the same relief again anywhere. As such, the Due Process claim Petitioner raises here is properly before another court and not this Court. Petitioner does not allege that he could not seek this same relief from either the First Circuit or the District of Massachusetts through class counsel. Because courts have overwhelmingly held that separate suits pursuing the same relief are inappropriate once a class has been certified, the Motion should be denied.

## II. <u>THE MOTION SHOULD BE DENIED.</u>

[1] The *D.V.D.* court granted a preliminary injunction in the same order, but that injunction was stayed by the Supreme Court and subsequently dissolved. *D.V.D. II*, 2026 U.S. Dist. LEXIS 38553, at *17–18, 20.

**a. Petitioner cannot seek relief from the Court that duplicates relief sought by a class of which he is a member.**

There is no dispute that Petitioner had a final order of removal and that Respondents removed him to a country other than the one named on his removal order. *See* Doc. 1 and 2. As such, Petitioner is definitively a member of the Rule 23(b)(2) class certified in *D.V.D. D.V.D. I*, 778 F. Supp. 3d at 378, 394. Because Petitioner has no right to opt out of this class, he cannot maintain a separate suit seeking identical relief in this Court. The Court should thus deny the Motion.

Federal Rule of Civil Procedure 23 authorizes individuals to sue "as representative parties on behalf of all members" of a class that was allegedly harmed. Fed. R. Civ. P 23(a). Before a court may entertain a class-action suit, it must first determine that all four requirements of Rule 23(a) are satisfied "and that class-wide adjudication is appropriate for one of the reasons set forth in the relevant subsection" of Rule 23(b). *D.V.D. I*, 778 F. Supp. 3d at 381. Under Rule 23(a), a class may not be certified unless, among others "the representative parties will fairly and adequately protect the interests of the class." Rule 23(a)(4). A class may be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2). Though some class actions offer class members the opportunity to opt out of the class, Rule 23(b)(2) classes are mandatory. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361-62 (2011) (stating that Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the [d]istrict [c]ourt to afford them notice of the action"). A judgment in a class action is binding on all class members, win or lose. *Cooper v. Fed. Reserve Bank*, 467 U.S. 867, 874 (1984) ("A judgment in favor of the plaintiff class extinguishes their claim, which merges into the judgment granting relief. A judgment in favor of the defendant extinguishes the claim, barring a subsequent action on that claim.").

The federal courts of appeal agree that members of a certified class may not bring

individual suits seeking the same relief as the class seeks.[2] The district courts have largely agreed.[3] This is because "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (internal quotation marks omitted). Indeed, in this precise context, several judges have declined to hear claims that duplicated the relief sought in *D.V.D. Ghamelian v. Baker*, 2025 U.S. Dist. LEXIS 139238, at *6–7 (D. Md. July 22, 2025) (Gallagher, J.); *Tanha v. Warden*, 2025 U.S. Dist. LEXIS 140142, at *12–13 (D. Md. July 22, 2025) (Rubin, J.); *I.V.I. v. Baker*, 2025 U.S. Dist. LEXIS 101188, at *4–6 (D. Md. May 27, 2025) (Bredar, J.); *Nolasco v. Noem*, 2026 U.S. Dist. LEXIS 268, at *14–18 (D. Md. Jan. 5, 2026) (Russell, J.); *Sanchez v. Bondi*, 2025 U.S. Dist. LEXIS 161938, at *4–6 (D. Colo. Aug. 20, 2025); *Qasemi v. Kurzdorfer*, 2025 U.S. Dist. LEXIS 204367, at *16–17 (W.D.N.Y. Oct. 16, 2025).[4]

---

[2] *Crawford v. Bell*, 599 F.2d 890, 892-93 (9th Cir. 1979); *McNeil v. Guthrie*, 945 F.2d 1163, 1165 (10th Cir. 1991) ("Individual suits for injunctive and equitable relief . . . cannot be brought where there is an existing class action. To permit them would allow interference with the ongoing class action."); *Norris v. Slothouber*, 718 F.2d 1116, 1117 (D.C. Cir. 1983) (holding that a plaintiff whose "allegations substantially overlap those in" a pending class action should "be referred to the district judge before whom the [class] action is pending"); *Gilespie v. Crawford*, 858 F.2d 1101, 1103 (5th Cir. 1988) ("Individual members of [a] class . . . may assert any equitable or declaratory claims they have, but they must do so by urging further action through the class representative and attorney, including contempt proceedings, or by intervention in the class action."); *Groseclose v. Dutton*, 829 F.2d 581, 585 (6th Cir 1987) ("There is no reason the [class-action] court cannot deal with the issue, and every reason why it should . . . . [I]t seems to us that to have two or more judicial cooks stirring the same broth in the same penal kitchen would be a recipe for chaos."); *Goff v. Menke*, 672 F.2d 702, 704 (8th Cir. 1982) ("For reasons of law as well as judicial economy . . . , to the extent that injunctive relief was sought, [the class-member plaintiff] should have been required to proceed through the class representative or through intervention."); *Bryan v. Werner*, 516 F.2d 233, 239 (3d Cir. 1975); *Horns v. Whalen*, 922 F.2d 835 (4th Cir. 1991).

[3] *See, e.g.*, *Byrd v. O'Grady*, 1990 U.S. Dist. LEXIS 9442, at *6 (N.D. Ill. July 26, 1990); *Valencia v. Chestnut*, 2025 U.S. Dist. LEXIS 255907, at *2 (E.D. Cal. Dec. 10, 2025); *Rahman v. Blinken*, 2024 U.S. Dist. LEXIS 175307, at *22 (D.D.C. Sept. 27, 2024); *Dentry v. Snyder*, 2020 U.S. Dist. LEXIS 54577, at *5 (E.D. Mich. Mar. 30, 2020).

[4] Respondents acknowledge that many judges have also declined to dismiss actions that

Allowing members of a mandatory class to pursue their own individual actions "would allow interference with the ongoing class action," and it could ultimately threaten the certification of the underlying class by creating differences among the class members. *See McNeil*, 945 F.2d at 1165. If the Court grants Petitioner injunctive relief, it risks ordering relief that is either more or less than he will ultimately be entitled to under *D.V.D.* The First Circuit recently issued a decision in *D.V.D.* on September 18, 2026, affirming the district court's declaratory judgment, but this Petitioner was removed before that date, and it is the government's position that First Circuit's stay pending appeal remains in effect until the issuance of the mandate. Regardless, Petitioner, as a member of the Rule 32(b)(2) class must seek relief through the class—not in this Court. Courts that have determined otherwise are wrong.

**b. Petitioner is barred from seeking relief in this Court because *res judicata***

---

duplicate *D.V.D. See, e.g.*, *Phong Thanh Nguyen v. Scott*, 796 F. Supp. 3d 703, 729–732 (W.D. Wash. Aug. 21, 2025). However, it appears that the respondents in those cases pressed arguments that the petitioners were *per se* precluded from seeking such procedures due to the existence of a judicial stay from the Supreme Court, or due to the implicit reasoning that underlay it. *Id.* Respondents make no such argument here. Though some courts have held that individual claims for third-country procedures do not duplicate *D.V.D.*'s request for class-wide third-country procedures, *see id.* at 730 (citing *Pride v. Correa*, 719 F.3d 1130, 1137 (9th Cir. 2013), this is a distinction without a difference. In *Pride*, the court held that a class action which sought general improvements to a prison medical system (for example, hiring more doctors and nurses and implementing better treatment protocols) did not preclude a class member from seeking specific treatment of enumerated medical issues. 719 F.3d at 1134, 1137–38. Clearly, a class action seeking better staffing and procedures at prisons has little to do with an individual's claim that he personally is being denied medical treatment. Here, by contrast, the structural reform sought in *D.V.D.* is that each member of the class must be provided with notice and an opportunity to challenge third-country removals. *D.V.D. II*, 2026 U.S. Dist. LEXIS 38553, at *100 ("The Court DECLARES that *class members* have the right to meaningful notice before removal to any third country. []The Court DECLARES that *class members* have the right to a meaningful opportunity to raise a country-specific claim against removal before removal to any third country.") (emphasis added). Petitioner seeks exactly this relief here. Thus, *Pride* is not controlling, and Petitioner's claims duplicate the claims in *D.V.D.*

**applies once final judgment has been entered.**

If Rule 23 itself were not enough, other procedural rules aimed at preventing or resolving conflicting judgments compel the same result. The first-to-file rule controls before judgment, and res judicata applies once final judgment has been entered. "As a general rule, duplicative litigation between two federal district courts should be avoided." *D.C. v. Fairfax Cnty. Sch. Bd.,* 171 F.4th 255, 265 (4th Cir. 2026) (internal quotation marks omitted) (alterations accepted). Before judgment in the class action, the first-to-file rule provides that courts should not entertain a duplicative action when the plaintiff is already a party to a different action regarding the same claims. *Id*. Petitioner is already litigating the same claims as a *D.V.D.* class member, so the district court should not have entertained his second-filed petition. *Id.* (applying the first-to-file rule to dismiss plaintiffs from a class action lawsuit who had first filed an individual suit); *Baatz v. Columbia Gas Transmission, LLC,* 814 F.3d 785, 790-91 (6th Cir. 2016) (applying the first-to-file rule in the class action context); *Mcneil v. Guthrie,* 945 F.3d 1163, 1165-66 (10th Cir. 1991) ("Claims for equitable relief must be made through the class representative until the class action is over or the consent decree is modified."). And while the first-to-file rule affords district courts a degree of discretion about how to remedy a violation of the rule (through dismissal or a stay), and even in evaluating the extent of overlap between cases, here it is undisputed that Petitioner is a *D.V.D.* class member there is an overlap between his individual claims and his claims as a class member.

A distinct rule compels the same result after final judgment in the class action. Now that judgment has been entered in *D.V.D.*, class members like Petitioner are barred by *res judicata* from seeking second bite at the apple on the same claims in different courts. "[U]nder elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation. *Cooper v. Fed. Reserve Bank,* 467 U.S. 867, 874 (1984); That Petitioner's suit is barred by the final judgment in *D.V.D.* is the straightforward consequence of the finality of that action. *Abella Owners' Ass'n v. MI Windows & Doors Inc.,* 860 F.3d 218, 224 (4th Cir. 2017) (affirming the dismissal under *res judicata* of plaintiff's claim because he was a class member in an action with a

final consent order).

Based on these principles, this Court has recognized that "duplicative litigation between two federal district courts should be avoided" and upheld dismissals of challenges duplicative of those in pending class actions. *D.C.,* 171 F.4th at 265 (dismissing plaintiffs' claims as duplicative of a later filed class action because "[t]he cases challenged the same decisions and sought relief for the same injury"); *see also Horns v. Whalen*, No. 90-6068, 1991 U.S. App. LEXIS 7, at *4 (4th Cir. Jan. 2, 1991) ("This Circuit as well as several other courts of appeals and district courts have held that it is not an abuse of discretion for a court to decline jurisdiction over an issue pending in another court, *particularly in the instance of a class action.*" (emphasis added)); *see also Slezak v. Evatt*, No. 93-6641, 1995 U.S. App. LEXIS 493 (4th Cir. Jan. 12, 1995) ("A class member generally is bound by the result of the class action and cannot prosecute his claims separately.") (citing *Goff v. Menke,* 672 F.2d 702, 704 (8th Cir. 1982)).

Here, Petitioner is concededly a member of the class certified in *D.V.D.* He "challenges the same [DHS] decisions and [seeks] [] relief for the same injury," *Fairfax Cnty. Sch. Bd.,* 171 F.4th at 265, alleged by the *D.V.D.* class action currently on appeal in the First Circuit. His claims arise from the application of the Guidance—the policy being challenged in *D.V.D.* Petitioner's case is indivisible and indistinguishable from the *D.V.D.* class action indeed, if the class wide judgment were not stayed, he would be a beneficiary of the relief the *D.V.D.* district court ordered. The very existence of his claims, separate from the class, undermines the purpose and function of Rule 23 directly conflicts with the stay of class wide relief entered by the First Circuit. Thus, *Res judicata* principles dictate that Petitioner be barred from seeking relief separate from the class in this Court.

**c. Petitioner's claims are barred in District Court pursuant to 8 U.S.C. § 1252(b)(9) and FARRA.**

First, Section 1252(g)'s bars Petitioner's claims. Petitioner's action not only plainly arises from the execution of their final orders of removal to Equatorial Guinea, the remedy

they seek falls firmly within the Executive's "plenary and exclusive" authority to speak for the country "in the field of international relations." *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936). All three branches of Government have made clear that the claims Petitioner raises are outside this Court's control; this Court should dismiss Plaintiffs' complaint and deny their motion for emergency relief.

*Second,* claims are barred in district courts by Section 1252(a)(5) and (b)(9). By law, "the sole and exclusive means for judicial review of an order of removal" is a "petition for review filed with an appropriate court of appeals," that is, "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. §§ 1252(a)(5), (b)(2). This explicitly excludes "section 2241 of title 28, or any other habeas corpus provision." 8 U.S.C. § 1252(a)(5). Section 1252(b)(9) is an "unmistakable 'zipper' clause" that "channels judicial review of *all* [claims arising from deportation proceedings]" to a court of appeals in the first instance. *AADC*, 525 U.S. at 483. "Taken together, §[§] 1252(a)(5) and [(b)(9)] mean that *any* issue— whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition for review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016). Section 1252(b)(9) thus eliminates this Court's jurisdiction over Plaintiffs' claims by channeling "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien" to the courts of appeals. Accordingly, this Court lacks jurisdiction under §§ 1252(a)(5) and (b)(9) to review Plaintiffs' request to "undo" their removals. *See J.E.F.M.*, 837 F.3d at 1031; *see also, Mata v. DHS*, 426 F. App'x 698, 700 (11th Cir. 2011); *Canal A Media Holding, LLC v. USCIS*, 964 F.3d 1250, 1257-58. (11th Cir. 2020); *Camarena v. ICE,* 988 F.3d 1268, 1272 (11th Cir. 2021); *Linares v. DHS*, 529 F. App'x 983 (11th Cir. 2013); *Themeus v. DOJ*, 643 F. App'x 830 (11th Cir. 2016).

Petitioner focuses on the lack of notice regarding the country of removal as if their fear depends on receiving that notice. It does not. To the extent Plaintiffs claim that due process requires notice of removal to the third country, they could have also made that claim

through the administrative process. Petitioner knew that this process is available *and* of the likelihood that they would be removed to a third country in light of the highly publicized nature of third country removals, but are still seeking emergency relief in this Court. This is precisely the scenario Congress intended to preclude with §1252(b)(9). As a result, This Court should give effect to Congress' plain intent and deny Plaintiffs' motion.

*Third,* FARRA and 8 U.S.C. § 1252(a)(4) also preclude this Court from issuing the requested relief. The Convention Against Torture (CAT) is not self-executing. *See Medellin v. Texas*, 552 U.S. 491, 505, 520 (2008); *Saint Fort v. Ashcroft*, 329 F.3d 191, 202 (1st Cir. 2003). Rather, it is only operative domestically insofar as Congress implements it by statute. Congress, in its discretion, implemented it by directing the issuance of regulations, expressly depriving courts of jurisdiction to review those regulations, and channeling all review of individual CAT claims into review of final orders of removal. FARRA § 2242(d); *see also* 8 U.S.C. § 1252(a)(4) (explaining that "a petition for review" is the "sole and exclusive means for judicial review of any cause or claim under the [CAT]").

To the extent Plaintiffs argue that they do not seek to rewrite or challenge the CAT regulations, that is simply untrue. Plaintiffs request that this Court order the Executive Branch to attempt to *force* a foreign sovereign to comply with their own treaty obligations. This is far beyond what the district court in *D.V.D.* even issued. This Court lacks jurisdiction to rewrite the CAT regulations and require *any* additional action by the Government to comply with its obligations under the CAT, and this Court certainly lacks jurisdiction to require the Executive Branch to strong-arm Equatorial Guinea into complying with Equatorial Guinea's CAT obligations. Because FARRA § 2242(d) and 8 U.S.C. § 1252(a)(4) together make clear that this Court is without authority to force the Executive Branch to take diplomatic action—which is far beyond what is in DHS's regulations—this Court should deny Plaintiffs' motion.

**D. Petitioner Is Not Likely to Succeed on the Merits of his Claims Because his Alleged Injury is Not Redressable.**

Petitioner fails to demonstrate a likelihood of success on the merits of his claims—particularly since Petitioner is not in the actual or constructive custody of the Executive—because the injuries he alleges cannot be redressed by this Court and the extraordinary interim relief they seek would violate the separation of powers by inserting the judiciary into sensitive issues of foreign affairs.

Petitioner is in the custody of the government of Equatorial Guinea. His is not in the actual or constructive custody of the United States. Accordingly, this Court lacks the power to grant Petitioner the relief he seeks—directing the Government to facilitate Plaintiffs' return to the custody of the United States. *See, e.g.*, *In re Petitioners Seeking Habeas Corpus Relief in Rel. to Prior Detentions at Guantanamo Bay*, 700 F. Supp. 2d 119, 132 (D.D.C. 2010), *aff'd sub nom. Chaman v. Obama*, No. 10-5130, 2012 WL 3797596 (D.C. Cir. Aug. 10, 2012) (holding the court has no authority over foreign governments to redress petitioners' claims, as such their claims are moot); *Al Joudi v. Bush,* 2008 WL 821884, at *1 (D.D.C. Mar. 26, 2008) (finding injuries are not redressable if they are "totally dependent upon the actions of a nonparty sovereign authority beyond the control of this Court."). Among other things, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023). When "existence of one or more of the essential elements of standing 'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict,' . . . it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to . . . permit redressability of injury." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

First, this Court cannot issue an order requiring the Government to compel Petitioner's return to the United States or take any specific diplomatic action regarding Petitioner. Such an extraordinary order would violate the separation of powers by inserting the judiciary into sensitive issues of foreign affairs. *See Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025) (an order to "effectuate" an alien's return from the custody of a foreign

nation went too far, and ordering the district court to clarify its order "with due regard for the deference owed to the Executive Branch in the conduct of foreign affairs"). Matters of foreign affairs are "so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952). The President's power to speak for the country "in the field of international relations" is both "plenary and exclusive." *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936).

Moreover, it is completely speculative that Equatorial Guinea would release Petitioner upon a request from the United States. In anticipating that the United States would be able to regain custody simply by asking, mere "guesswork" is all Petitioner has. *Hecate Energy LLC v. FERC*, 126 F.4th 660, 665–66 (D.C. Cir. 2025). Petitioner has no evidence to the contrary, so any redress is speculative. It is simply beyond the scope of this Court's power to direct the actions of a foreign government. *See Kiyemba v. Obama*, 561 F.3d 509, 515 (D.C. Cir. 2009) ("Judicial inquiry into a recipient country's basis or procedures for prosecuting or detaining a transferee from Guantanamo would implicate not only norms of international comity but also . . . separation of powers principles.").

Petitioner's claims also suffer from another insurmountable justiciability hurdle: they raise claims that the federal Judiciary lacks authority to entertain. The crux of Petitioner's claim is a desire to second-guess the adequacy of the diplomatic assurances the Government obtained from Equatorial Guinea. But it is well-established that diplomatic assurances are not judicially reviewable. "The Judiciary is not suited to second-guess such determinations—determinations that would require federal courts to pass judgment on foreign justice systems and undermine the Government's ability to speak with one voice in this area." *Munaf v. Geren*, 553 U.S. 674, 702 (2008). And when the Executive determines a country will not torture a person on his removal, that is conclusive. *Id. at* 702-03. Indeed, "[u]nder *Munaf* ... the district court may not question the Government's determination that a potential recipient country is not likely to torture a detainee." *Kiyemba v. Obama*, 561 F.3d 509, 514 (D.C. Cir. 2009), *cert. denied*, 559 U.S. 1005 (2010). As a result, "the district court may not question

the Government's determination that a potential recipient country is not likely to torture a detainee." *Kiyemba,* 561 F.3d at 514-516. Instead, "*Munaf* precludes the district court from barring the transfer of a [party] on the ground that he is likely to be tortured or subject to further prosecution or detention in the recipient country." *Id.* at 516. This Court simply cannot review Equatorial Guinea's diplomatic assurances or second-guess the Government's determination that those assurances are credible. Accordingly, the Court cannot redress Petitioner's alleged injury.

Petitioner's other arguments are unavailing. Because Plaintiffs are in Equatorial Guinea's custody, this case is nothing like the cases Petitioner references in which courts entered interim relief to prevent the transfer or removal of individuals who were in the custody or control of the United States at the time the lawsuit was filed. *See, e.g.*, *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1369 (2025) (enjoining removal of group of immigrant detainees until constitutional claims could be heard on merits); *Ozturk v. Hyde*, 136 F.4th 382, 394 (2d Cir. 2025) (ordering the return of an immigration detainee from Louisiana to Vermont); *Perez Parra v. Castro*, 765 F. Supp. 3d 1241, 1243 (D.N.M. 2025) (temporarily enjoining the transfer of petitioners to Guantanamo Bay); *Arostegui-Maldonado v. Baltazar*, No. 25-cv-2205, 2025 WL 2280357, at *16 (D. Colo. Aug. 8, 2025) (enjoining an immigration detainee's transfer out of the District of Colorado during the pendency of his habeas action).

Moreover, as discussed below, this case is clearly distinguishable from the cases where courts have ordered the Government to facilitate an individual's return to the United States. Here, Petitioner asks this Court to put the cart before the horse: order the Government to "facilitate" particular arrangements with a foreign nation for the benefit of an alien *before* there has been any finding that the alien's removal was unlawful or otherwise erroneous.[5] The cases upon which Petitioner principally rely involved situations where the Government

---

[5] And, for the reasons explained above, Plaintiffs' claims challenging the propriety of their removals to Equatorial Guinea must be brought, if at all, as part of the *D.V.D.* litigation in the District of Massachusetts.

had *conceded* that the alien's removal had been erroneous. *See, e.g.*, *Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 507 n.3 (D. Md. 2025) (order to facilitate alien's return to the United States where an "administrative error" led to his removal to El Salvador); *Melgar-Salmeron v. Bondi*, No. 23-7792, Doc. 49 (2d. Cir. June 25, 2025) (order to facilitate alien's return to the United States where he had been "improperly sent to El Salvador"). Conversely, the Government maintains that Petitioner's removal to Equatorial Guinea was lawfully executed pursuant to DHS's statutory third country removal authority under 8 U.S.C. § 1231(b) and the DHS Guidance. Furthermore, their removals were entirely consistent with not one but two binding decisions from the Supreme Court. *Dep't of Homeland Sec. v. D.V.D.,* 145 S. Ct. 2153 (2025); *Dep't of Homeland Sec. v. D.V.D.,* 145 S. Ct. 2627 (2025).

## III. CONCLUSION.

The Court should deny the Motion. There are currently adequate procedural protections in place with respect to third country removal. To the extent Petitioner claims otherwise, these claims are subsumed by the ongoing *D.V.D.* class action litigation and Petitioner's rights should properly be pursued in that case. Accordingly, should this Court issue any relief, it should stay such relief pending any appeal. At a minimum, it should stay any decision 14 days to allow Defendants to seek an orderly stay from the appropriate appellate court.

RESPECTFULLY SUBMITTED this 23rd day of September, 2026.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/Derek Faraldo*
DEREK FARALDO
Assistant United States Attorney
*Attorneys for Respondents*