**GREEN | EVANS-SCHROEDER, PLLC**
130 W. Cushing Street
Tucson, AZ 85718
Tel. (520) 882-8852
Fax (520) 882-8843

**Jesse Evans-Schroeder** | Arizona Bar No. 027434
Email: jesse@arizonaimmigration.net

**Matthew H. Green** | Arizona Bar No. 020827
Email: matt@arizonaimmigration.net

**Ami Hutchinson |** Arizona Bar No. 039150
Email: ami@arizonaimmigration.net

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| A.M.A.S.,<br>Plaintiff,<br>v.<br>Markwayne Mullin, et al.,<br>Defendants. | Case No. 26-cv-06601-JCH<br><br>**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR TEMPORARY INJUNCTION** |

## INTRODUCTION

On or about April 30, 2026, Defendants removed Plaintiff—an openly gay man from a prominent (and disfavored) Egyptian family—to Equatorial Guinea, a country that the United States recently condemned for its deplorable conditions of confinement, its lack of a refugee or asylum framework, its lack of effort to protect LGBTQ+ persons or to combat discrimination against them, and its record of facilitating human trafficking.[1] (Indeed, even the current Administration, which has heavily edited and omitted information from all Country Reports[2], most recently noted "credible reports of: torture or cruel, inhuman, or degrading treatment or punishment; arbitrary arrest or detention; . . . [and] trafficking in persons[.]"[3]

In doing so, Defendants failed to provide any individualized process or fear hearing, opting instead to swiftly send Plaintiff to a third country without the opportunity to contest his removal or apply for relief, and without identity papers or any hope of future lawful status. Now, despite the recent vacatur of the policies and guidance that led to Plaintiff's unlawful removal, Defendants ask the Court to conclude that its actions were justified.

As explained herein, Defendants' arguments fail.

## ARGUMENT

### I. The Vacatur of Agency Action Nullifies the Action Nunc Pro Tunc.

On March 23, 2025, a group of noncitizens filed a putative class action lawsuit against the Department of Homeland Security, challenging the agency's "new, unlawful policy of removing noncitizens with final orders to 'third countries' – i.e., countries not mentioned in

---

[1] *See* 2023 Country Reports on Human Rights Practices, Equatorial Guinea, https://www.state.gov/reports/2023-country-reports-on-human-rights-practices/equatorial-guinea/.

[2] Center for Gender and Refugee Studies, State Department Sabotages Country Reports on Human Rights Practices (Oct. 1, 2025), https://cgrs.uclawsf.edu/en/our-work/publications/state-department-sabotages-country-reports-human-rights-practices.

[3] 2024 Country Reports on Human Rights Practices, Equatorial Guinea, https://www.state.gov/reports/2024-country-reports-on-human-rights-practices/equatorial-guinea.

their final removal orders – without providing them with effective notice and a meaningful opportunity to claim that they reasonably feared persecution or torture in those countries." *D.V.D. v. U.S. Department of Homeland Security*, -- F.4th -- , 2026 WL 2797801, at *1 (1st Cir. Sept. 18, 2026) (explaining case history).

The lawsuit eventually incorporated challenges to the agency's March 30, 2025, policy guidance, and its July 9, 2025, memorandum. *See* Guidance Regarding Third Country Removals (Mar. 30, 2025); Memorandum from Todd M. Lyons, Acting Director, ICE, To All ICE Employees, Third Country Removals Following the Supreme Court's Order in Department of Homeland Security v. D.V.D., No. 24A1153 (U.S. June 23, 2025) (collectively, "the Guidance"). *See D.V.D.*, 2026 WL 2797801, at *2–3.

On February 25, 2026—after several interim decisions and appeals[4]—the District Court for the District of Massachusetts held that third-country removals pursuant to the Guidance are unlawful in three ways. *D.V.D. v. U.S. Dep't of Homeland Sec.*, 821 F. Supp. 3d 102 (D. Mass. 2026).

Reduced to its essence, the judgment declared applicable law to require DHS to engage in statutory sequencing when removing all class members and to provide every class member with effective notice and a meaningful opportunity to raise any fear-based claim regarding their removal to a third country. The judgment also set aside the Guidance as unlawful under the APA insofar as it authorizes removals that do not comply with these requirements. *D.V.D.*, 2026 WL 2797801, at *4.

The Government appealed, and on September 18, 2026, the First Circuit Court of Appeals largely affirmed the District Court's vacatur of the Guidance pursuant to 5 U.S.C. § 706(2)(A) as not in accordance with law.

---

[4] Defendants contend that the Supreme Court's 2025 decision granting the Government's emergency request to stay the lower court's preliminary injunction pending a decision on the merits, is "precedent that commands respect." Response at 1. As explained in detail below, this contention does not match the procedural history or current status of that litigation.

On September 23, 2026, the First Circuit issued an order clarifying that, pursuant to its September 18 decision, the March 16, 2026, stay pending appeal has been dissolved.[5] Thus, Defendants' suggestion to the contrary is incorrect. *See* Response at 2.

**Vacatur of an agency policy operates retroactively, such that the policy was never lawful to begin with**. *See Nat'l TPS All. v. Noem*, 166 F.4th 739, 760 (9th Cir. 2026) (Vacatur "declares that a past agency action was unlawful and returns the world to the status quo, before that unlawful action."); *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 522 (7th Cir. 2021) ("Vacatur . . . retroactively undoes or expunges a past state action."); Vacatur, Black's Law Dictionary (12th ed. 2024) ("The act of annulling or setting aside."). As such, Plaintiff's removal to Equatorial Guinea was unlawful, and the appropriate remedy is an order requiring Defendants to facilitate his return. *See e.g. Noem v. Abrego Garcia*, __ U.S. __, 145 S. Ct. 1017, 1018 (2025) (per curiam) (recognizing that if a non-citizen was removed in violation of the law, federal courts may require the Government to "facilitate" the individual's return and to "ensure that his case is handled as it would have been had he not been improperly sent" elsewhere).

Moreover, even assuming the First Circuit's decision is *not* final (or that its effect is stayed pending *certiorari*), Plaintiff's claims—which are not based in habeas—stand on their own. That is, even if the Guidance is ultimately upheld, Defendants' actions were unlawful *as applied* to Plaintiff because they violated *Plaintiff's* due process rights. *See, e.g.*, *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999) ("Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." *See id.* (determining that a "last minute" designation of an alternative country without a meaningful opportunity to apply for protection "violate[s] a basic tenet of constitutional due process"); *see also Najjar v. Lynch*, 630 F. App'x

[5] *See* Attachment A (Order of Court).

724 (9th Cir. 2016) (unpublished) ("In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country."). Other district courts in this Circuit have similarly enjoined the government from circumventing regulations and due process protections. *See, e.g., Vaskanyan v. Janecka*, No. 5:25-cv-01475-MRA-AS, 2025 WL 2014208, at *6 (C.D. Cal. June 25, 2025) (finding instructive another district courts' holding that "third-country removals are subject to the same mandatory protections that exist in removal or withholding-only proceedings"); *see also Phan v. Beccerra*, No. 2:25-cv-01757-DC-JDP, 2025 WL 1993735, at *7 (E.D. Cal. July 16, 2025) (granting TRO and preliminary injunction enjoining and restraining Defendants from removing Plaintiff "to a third country without notice and an opportunity to be heard").

## II. Regardless of Whether Plaintiff is a Member of the DVD Class, His Independent Claims Are Not Precluded and Res Judicata Does Not Apply

Plaintiffs' initial Petition for Writ of Habeas Corpus was filed on April 24, 2026, at which time the District Court's decision was stayed pending appeal to the First Circuit Court of Appeals. For that reason, class members were encouraged to file habeas petitions raising third-country claims. That is, until the District Court's decision could take effect, the only way for individuals like Plaintiff (then Petitioner) to assert their rights was through a habeas of their own; they could not rely upon a decision that lacked finality.

On May 18, 2026, Plaintiff moved for voluntary dismissal of his habeas claim. Four months later, on September 15, 2026, he filed the present action, which raises claims under the Fifth Amendment of the U.S. Constitution and the Administrative Procedure Act. *See* Dkt. 1.

Although Plaintiff's original habeas claim was fully within the scope of *D.V.D.*, his new claim is not—that is, it requests relief that the *D.V.D.* litigation is unlikely to provide. Further, even assuming class membership, district courts have permitted independent constitutional claims that have not already been conclusively addressed by the *D.V.D.*

litigation. *See, e.g.*, *Arenado-Borges v. Bondi*, No. 25-cv-02193-JNW, 2025 WL 3687518 (W.D. Wash. Dec. 19, 2025); *Chen v. Blanche*, No. C26-832-KKE, 2026 WL 914807 (W.D. Wash. Apr. 3, 2026); *Castillo Rivas v. Bondi*, No. C26-0134-KKE, 2026 WL 295705 (W.D. Wash. Feb. 4, 2026). These decisions, and many others, point to the Ninth Circuit's decisions in *Pride v. Correa*, 719 F.3d 1130 (9th Cir. 2013) and *Crawford v. Bell*, 599 F.2d 890, 892-93 (9th Cir. 1979), as authority supporting the exercise of jurisdiction over the noncitizen's claims.

Moreover, Defendants present conflicting arguments. Initially, they contend that the Guidance remains in effect pending the issuance of a mandate in *D.V.D*. Response at 2. Later, however, they claim, "[n]ow that judgment has been entered in *D.V.D.*, class members like Petitioner are barred by *res judicata* from seeing [a] second bite at the apple on the same claims in different courts." Response at 9. *See also id*. ("That Petitioner's suit is barred by the final judgment in *D.V.D.* is the straightforward consequence of the finality of that action."). Defendants cannot have it both ways. Although the D.V.D. judgment is final, Plaintiff is not precluded from raising the claims in the present litigation.

**III. Defendants' Jurisdictional Arguments Likewise Fail**

Following a familiar playbook, Defendants provide three alternative bases for this Court to deny Plaintiff's motion for lack of jurisdiction.

First, they argue that Plaintiff's claims are entirely precluded by § 1252(g), which provides that "[e]xcept as provided in [§ 1252] . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). Response at 10-11.

For the same reasons identified by the First Circuit in *D.V.D.*, this argument fails. Plaintiff does not contest his removability. "Nor does [he] challenge the validity of [his] removal order[ ], seek to delay or thwart the execution of [that] order[], or deny that [he]

can be removed lawfully to [a] third countr[y] based on [that] order[].” 2026 WL 2797801, at *9. Rather, Plaintiff challenges his unlawful transfer to a third country without first being provided effective notice and a meaningful opportunity to raise a fear-based claim against Equatorial Guinea.

Put simply, “[a] claim directed at DHS's adoption of policies involving identification of a country of removal not contemplated by the removal order does not arise from the decision or action to "execute" that order.” 2026 WL 2797801, at *7. *See also Ibarra-Perez v. United States*, 154 .4th 989, 997 (9th Cir. 2025) (explaining that removal to a country not mentioned in one's order of removal is not “execution” of the removal order under § 1252(g)).

Second, Respondent argue that Plaintiff’s claims are barred pursuant to 8 U.S.C. §§ 1252(a)(5) and (b)(9) (the “zipper” clause). Response at 11-12. More specifically, Defendants state that, “[t]o the extend [Pettiioner] claims that due process requires notice of removal to a third country, [he] could have also made that claim through the administrative process.” *Id*.

This argument was similarly raised – and rejected – in *D.V.D*.

An individual “cannot, as a practical matter, anticipatorily raise in their removal proceedings fear-based claims about removal to a country not identified in those proceedings.” 2026 WL 2797801, at *11.

Moreover, the Supreme Court has repeatedly interpreted § 1252(b)(9) to strip the district courts of jurisdiction over claims seeking “review of an order of removal, the decision to seek removal, or the process by which removability will be determined.” *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020); s*ee also Jennings v. Rodriguez*, 583. U.S. 281, 294 (2020) (plurality opinion), 355 (Breyer, J., dissenting).

Here, Plaintiff challenges actions that occur *after* those identified by the Supreme Court as triggering § 1252(b)(9)’s limitations. *See DVD*, 2026 WL 2797801, at *11.

Third, Defendants argue that § 1252(a)(4) and § 2242(d) of the Foreign Affairs Reform and Restructuring Act of 1998 (“FARRA”) also deprive this Court of jurisdiction over Plaintiff’s claims. Response at 12.

Pursuant to § 1252(a)(4), "[n]otwithstanding any other provision of law (statutory or non-statutory), including [§] 2241 of [T]itle 28, . . . a petition for review filed with the appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of any cause or claim under [the CAT]."

Section 2242(d) of the FARRA provides that:

> [N]othing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under [the FARRA/CAT] or this section, or any other determination made with respect to [the FARRA/CAT's policy to refrain from sending any person to a country where there are substantial grounds for believing the person would be in danger of being subjected to torture], except as part of the review of a final order of removal . . . .

Plaintiff is not raising a claim under the Convention Against Torture. As such, the jurisdiction-limiting provisions of § 1252(a)(4) and the FARRA do not apply. *See D.V.D.*, 2026 WL 2797801, at *11.

For these reasons, this Court has jurisdiction to review Plaintiff’s claims.

## IV. Plaintiff’s Injuries Are Redressable

Finally, Defendants argue that Plaintiff’s “alleged injury” is not redressable by this Court.

As an initial matter, there is no mere *allegation* of injury here. Rather, Plaintiff presents evidence that he has been detained, beaten, tortured, held incommunicado, and threatened with refoulment by Equatorial Guinea authorities—all of which occurred after the injury imposed by Respondents: the violation of his procedural and substantive due process rights and his transfer to a country whose “assurances” that Plaintiff would not be persecuted, tortured, or refouled, are anything *but* credible.

At the same time, Defendants wholly misconstrue Plaintiff’s arguments. Plaintiff does not suggest that he is in the actual or constructive custody of the Government (Response at 13,

15). Neither does he request an order "requiring the Government to compel [his] return to the United States or take any specific diplomatic action[.]" *Id*. Similarly, Plaintiff does not ask the Court to review Equatorial Guinea's diplomatic assurances or the Government's determination that those assurances were credible. Response at 15. "Rather, Plaintiff seeks declaratory and injunctive relief against Defendants requiring reasonable Defendants-controlled measures to facilitate [his] return, and restoration of the position he occupied prior to his unlawful removal." Complaint (Dkt. 1) at 3.

Moreover, Defendants' arguments are based on a faulty premise—namely, that Plaintiff's removal was lawful. Ignoring that the Guidance was recently vacated and set aside as *un*lawful, Defendants attempts to distinguish this case from those in which courts have ordered the Government to facilitate an individuals' return to the United States after there has been a finding that the noncitizen's removal was unlawful or otherwise erroneous. *See* Response at 15-16 (citing *Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 507 n.3 (D. Md. 2025) and *Melgar-Salmeron v. Bondi*, No. 23-7792, Doc. 49 (2d. Cir. June 25, 2025)). Following the First Circuit's recent decision in *D.V.D.*, these arguments summarily fail.

**CONCLUSION**

All factors considered, Plaintiff has demonstrated that he is entitled to preliminary injunctive relief. This Court should therefore enter an order requiring Defendants to facilitate his return to the United States.

Dated: September 25, 2026

Respectfully Submitted,

s/Ami Hutchinson
Ami Hutchinson
*Attorney for Plaintiff*
Green Evans-Schroeder, PLLC
130 W. Cushing Street
Tucson, Arizona 85701
Tel: (520) 882-8852
Email: ami@arizonaimmigration.net