**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

A.M.A.S.,

Plaintiff,

v.

Markwayne Mullin, et al.,

Defendants.

No. CV-26-06601-PHX-JCH

**ORDER**

The Court has reviewed Plaintiff's Emergency Motion for a Temporary Injunction. (Doc. 2.) The Court will set the matter for a hearing. In advance of the hearing—during which, as discussed below, the Court intends to advance the trial on the merits and consolidate it with Plaintiff's request for injunctive relief—the Court wishes to provide the parties with its tentative ruling. The point of providing it beforehand is to streamline the hearing and enhance the parties' ability to address any perceived errors in the Court's tentative analysis. If the parties jointly agree, after reviewing the tentative ruling, that the hearing is unnecessary, they may file a stipulation to vacate the hearing and request that the Court issue a final order based on the tentative ruling.

In the alternative, the parties may wish to consider attending a settlement conference before a Magistrate Judge.

Accordingly,

**IT IS ORDERED** setting a hearing to address Plaintiff's Emergency Motion for a Temporary Injunction (Doc. 2) on **October 7, 2026 at 3:30 P.M.** in Courtroom 5(B),

405 W Congress Street, Tucson, AZ, 85701, before Judge John C. Hinderaker. The hearing will be conducted in person.

**IT IS FURTHER ORDERED** that the parties must meet and confer and advise the Court by **Tuesday, October 6, 2026 at 2:00 PM** whether they request this matter be referred for a settlement conference before a Magistrate Judge.

Dated this 5th day of October, 2026.

John C. Hinderaker
United States District Judge

**TENTATIVE RULING**

Plaintiff A.M.A.S. holds a grant of deferral of removal to Egypt under the Convention Against Torture ("CAT"). Defendants nonetheless removed him to Equatorial Guinea—a country not designated in his removal order and with which he has no ties—without notice or any opportunity to raise a fear-based claim against removal to that country. It is unrebutted that he has since been held under armed guard; threatened at gunpoint; and arrested, beaten, and held incommunicado by Equatorial Guinean authorities. In this civil action, Plaintiff seeks declaratory and injunctive relief requiring Defendants to facilitate his return. (Doc. 1.) Before the Court is Plaintiff's Emergency Motion for a Temporary Injunction (Doc. 2), which Defendants oppose (Doc. 9), and to which Plaintiff has replied (Doc. 10).[1]

Pursuant to Federal Rule of Civil Procedure 65(a)(2), the Court consolidates resolution of the Motion with the merits of the Complaint. The Court will grant relief on Counts One and Three, deny Count Two as moot, order Defendants to facilitate Plaintiff's release from custody in Equatorial Guinea and his return to the United States, and enjoin his removal to any third country without notice and a meaningful opportunity to be heard.

## I. Background

### A. Plaintiff's Removal Proceedings and Grant of Deferral

Plaintiff, a native and citizen of Egypt, was admitted to the United States in 1998 as the child of a religious worker and became a lawful permanent resident in 2021. (Doc. 1 ¶ 30.) In October 2023, he was convicted of aggravated assault and possession of a synthetic narcotic and sentenced to two and one-half years' imprisonment and two years' probation. (*Id.*) On January 3, 2024, DHS placed Plaintiff in removal proceedings. (*Id.* ¶ 31.) On October 1, 2025, an immigration judge ("IJ") ordered him removed to Egypt but granted deferral of removal under CAT, finding he "faces a clear probability of torture in Egypt" because of his sexual orientation and his politically prominent family. (*Id.* ¶¶ 11,

---

[1] Although the parties' filings at times refer to Plaintiff as "Petitioner" and to Defendants as "Respondents," this is a civil action, not a petition for writ of habeas corpus. (*See* Doc. 1 ¶ 7.) Thus, the Court refers to the parties as Plaintiff and Defendants. And consistent with its order in Plaintiff's prior habeas proceeding, the Court refers to Plaintiff by his initials. *See A.M.A.S. v. Cantu*, No. CV-26-02888-PHX-JCH, Doc. 7.

31–32.) DHS did not appeal, and it has never moved to terminate the deferral under 8 C.F.R. § 1208.17(d). (*Id.* ¶ 33.)

**B. The Prior Habeas Action and Plaintiff's Removal to Equatorial Guinea**

On April 24, 2026, Plaintiff filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his immigration detention and seeking relief from third-country removal without notice. *A.M.A.S. v. Cantu*, No. CV-26-02888-PHX-JCH (D. Ariz.) (the "habeas action"). Before the Court ruled on the petition, Defendants removed Plaintiff to Equatorial Guinea.[2] (Doc. 1 ¶ 1.) Plaintiff was not told his destination until shortly before the flight; when he asked for a fear interview, he was told it was too late, and he was carried onto the aircraft. (Doc. 1 ¶ 1; Doc. 1-1 at 3–4 (Ex. A); Doc. 1-1 at 27.)

On May 6, 2026, the Court directed Respondents in the habeas action to address Plaintiff's allegation that he had been removed without a fear screening. No. CV-26-02888-PHX-JCH, Doc. 10. Respondents filed the declaration of Vu Cam, an ICE Acting Unit Chief, who attested: "Equatorial Guinea provided diplomatic assurances that the aliens removed from the United States pursuant to the Third Country Removal agreement will not be subjected to persecution or torture," the Department of State "determined that the diplomatic assurances were credible," and ICE followed DHS's March 30, 2025 Guidance Regarding Third Country Removals (the "Guidance") in removing Plaintiff. (*Id.*, Doc. 15-1 ¶¶ 5-6, 8.) Mr. Cam further attested that Plaintiff's "placement on the manifest for this charter served as the travel document" for his removal. (*Id.* ¶ 7.)

Plaintiff moved to voluntarily dismiss the habeas action on May 18, 2026, and the Court dismissed the action without prejudice. (*Id.*, Doc. 17.)

**C. Plaintiff's Detention in Equatorial Guinea**

Upon arrival, U.S. authorities transferred Plaintiff to the custody of Equatorial Guinean authorities, who held him with other U.S. deportees under armed guard at the decommissioned Hotel Bamy in Malabo. (Doc. 1 ¶¶ 1, 34; Doc. 1-1 at 6–15 (Ex. B)

[2] The precise date of Plaintiff's removal is unclear. An email from Plaintiff attached to the Complaint suggests he was removed on April 27, 2026. (Doc. 1-1 at 3–4 (Ex. A).) The Complaint alleges May 6, 2026 (Doc. 1 ¶ 1), and the Reply states April 30, 2026 (Doc. 10 at 2).

("O'Donnell Aff.").) The record—consisting primarily of the affidavit of Plaintiff's counsel and contemporaneous news reporting, and unrebutted by Defendants—reflects the following:

- Detainees were subjected to verbal abuse, beatings, and recurring threats that they could be killed and buried where nobody would ever find them. (O'Donnell Aff. ¶ 5(a).)
- Detainees were repeatedly told to return to their countries of origin. On September 1, 2026, a group of Ethiopian nationals who held U.S. protection against removal to Ethiopia were returned there after an official asked whether they wanted to go to their country or to jail. (*Id.* ¶ 5(d), (k).)
- On July 2, 2026, the African Commission on Human and Peoples' Rights requested that Equatorial Guinea adopt provisional measures, including refraining from transferring Plaintiff and thirteen other complainants against their will. (*Id.* ¶ 5(e).)
- On the night of July 31, 2026, after detainees began speaking with journalists, armed and masked officers dragged Plaintiff and four others from their rooms, handcuffed and assaulted them, and pointed guns at them. (*Id.* ¶ 5(g)–(i); Doc. 1-1 at 37–38.)
- On September 5, 2026, police aimed rifles at Plaintiff while he knelt with his hands raised, and a plainclothes officer shouted, "shoot him!" (O'Donnell Aff. ¶ 5(l)–(m); Doc. 1-1 at 55, 63.)
- On September 9, 2026, after Reuters published video of that incident and an interview with Plaintiff, officers confiscated the detainees' phones; Plaintiff was told the Reuters report was the reason. (O'Donnell Aff. ¶ 5(n)–(p); Doc. 1-1 at 67.)
- On September 11, 2026, Equatorial Guinean police arrested Plaintiff and another detainee. Witnesses reported that both men were bound with rope, hooded, and beaten. (O'Donnell Aff. ¶¶ 3, 8(a)–(b).) No charges are known to have been filed. (*Id.* ¶ 4.)
- Plaintiff has since been held incommunicado at an unknown location, reportedly without food or water. (*Id.* ¶¶ 3, 7.) As of September 15, 2026, his counsel did not

know his whereabouts or condition. (*Id.* ¶ 9.)

### D. This Action

On September 15, 2026, Plaintiff filed this action against the Secretary of Homeland Security, the Acting Director of ICE, the Attorney General, the Secretary of State, DHS, the Department of State, and the United States. (Doc. 1.) He asserts three claims: (1) violation of procedural due process under the Fifth Amendment; (2) violation of the Administrative Procedure Act ("APA"), on the theory that his removal exceeded Defendants' authority under 8 U.S.C. § 1231(b)(2), § 2242 of the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA") Pub. L. No. 105-277, div. G, 112 Stat. 2681-822 (codified at 8 U.S.C. § 1231 note), and 8 C.F.R. §§ 1208.17 and 1208.18; and (3) mandamus and equitable return-facilitation relief under 28 U.S.C. § 1361 and 5 U.S.C. § 706(1). (*Id.* at 18–22.) The same day, Plaintiff filed his Emergency Motion for a Temporary Injunction. (Doc. 2.) The Court ordered a response to the Motion (Docs. 7, 8); Defendants responded (Doc. 9), and Plaintiff replied (Doc. 10).

## II. Consolidation and Legal Standard

"Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing." Fed. R. Civ. P. 65(a)(2). Before doing so, the court must give the parties "clear and unambiguous notice . . . either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (citation omitted).

Consolidation is appropriate here: Liability turns on purely legal questions. The material facts bearing on liability—what process Defendants afforded Plaintiff before removing him—come from Defendants' own sworn submissions and the Guidance they invoke and are undisputed. Defendants have fully briefed every threshold and merits defense raised, and they ask the Court not only to deny the Motion but to dismiss the Complaint. (Doc. 9 at 2.) Defendants identify no additional evidence they would present at trial.

"The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987). A plaintiff seeking a permanent injunction must therefore demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

## III. Threshold Issues

### A. The Supreme Court's Stay Orders in *D.V.D.*

Defendants first contend the Supreme Court's stay decisions "squarely control[]" in "like cases," and characterize this action as a "misguided attempt to circumvent an order from the Supreme Court in *D.V.D.*" (Doc. 9 at 1–2 (quoting *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025)).) The Court disagrees.

The Supreme Court's orders in *D.V.D.* stayed the United States District Court for the District of Massachusetts orders granting a class-wide preliminary injunction, *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025); *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2627 (2025) (clarifying stay of preliminary injunction), and granting declaratory judgment in the class's favor pending appeal, *Dep't of Homeland Sec. v. D.V.D.*, No. 26-426, 2026 WL 2917860 (U.S. Sept. 29, 2026). The orders did not resolve the merits of any individual's due process claim. *See Boyle*, 145 S. Ct. at 2654 (interim orders "are not conclusive as to the merits"). The *D.V.D.* court has entered final judgment for the class, *D.V.D. v. U.S. Dep't of Homeland Sec.*, 821 F. Supp. 3d 102 (D. Mass. 2026); the First Circuit affirmed in relevant part, *D.V.D. v. U.S. Dep't of Homeland Sec.*, --- F.4th ---, 2026 WL 2797801 (1st Cir. Sept. 18, 2026); and the First Circuit dissolved its own stay (Doc. 10-1 at 2).

Nor is this a "like case[]." (Doc. 9 at 1 (quoting *Boyle*, 145 S. Ct. at 2654.) It is an

individual action, decided on the merits, brought by a plaintiff who has already been removed and who presents unrebutted evidence of detention and abuse in the receiving country. And this Court remains bound by Ninth Circuit precedent—including the authority discussed in Part IV—unless that precedent is "clearly irreconcilable" with intervening higher authority. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). An unreasoned order staying a class-wide preliminary injunction is not such authority. Defendants' related assertion that Plaintiff's removal was "entirely consistent with" the stay orders (Doc. 9 at 16) conflates the absence of a class-wide injunction with an affirmative determination that the process Plaintiff received satisfied due process. The stay orders made no such determination.

**B. *D.V.D.* Class Membership**

Defendants argue Plaintiff's requested relief duplicates the class relief sought in *D.V.D.* and that, because Plaintiff is a member of a mandatory Federal Rule of Civil Procedure ("Rule") 23(b)(2) class with no right to opt out, "he cannot maintain a separate suit seeking identical relief in this Court." (Doc. 9 at 6.) Defendants fail to recognize, however, that the Court's decision on this issue is discretionary. *Crawford v. Bell*, 599 F.2d 890, 893 (9th Cir. 1979) (holding that "when another court having jurisdiction over the same matter has entertained it and can achieve the same result," a court "*may choose* not to exercise its jurisdiction" over the matter or issue (emphasis added)). The Ninth Circuit has held that this discretion applies specifically where the other court's matter is a class action. *Id.* at 892; *see Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

The Court will therefore exercise its discretion to consider Plaintiff's claims even though he appears to be a member of the *D.V.D.* class. The exercise of discretion is particularly important here because the harm at issue—removal to a third country without due process, followed by detention, abuse, and incommunicado confinement in that country—is ongoing and, in the Court's view, irreparable.

Further, the relief sought here does not duplicate the relief obtained in *D.V.D.* In *Crawford*, the Ninth Circuit stated that a district court may dismiss "those portions of [the]

complaint which duplicate the [class action's] allegations and prayer for relief," but may not "dismiss[] those allegations of [the] complaint which go beyond the allegations and relief prayed for in [the class action]." 599 F.2d at 892–93. Similarly, in *Pride*, the Ninth Circuit held that "a district court may decline to exercise its jurisdiction over a [plaintiff's] claim seeking systemic injunctive relief . . . where the allegations and relief sought are duplicative of [a class action]." 719 F.3d at 1137.

The relief granted in *D.V.D.* was declaratory, coupled with an order setting aside the Guidance under the APA. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, 821 F. Supp. 3d 102 (D. Mass. 2026), *aff'd in part, vacated in part*, No. 26-1212, 2026 WL 2797801 (1st Cir. Sept. 18, 2026), *and cert. granted sub nom. Dep't of Homeland Sec. v. D.V.D.*, No. 26-426, 2026 WL 2917860 (U.S. Sept. 29, 2026). Plaintiff seeks neither. He seeks individual, remedial relief: facilitation of his return from Equatorial Guinea, restoration of the position he occupied before removal, and an injunction governing any future attempt to remove him. (*See generally* Doc. 1.) That relief has no preclusive effect on any other litigant, and it is consistent with—not in tension with—the rights declared in *D.V.D.*

Defendants respond that finding "individual claims for third-country procedures do not duplicate *D.V.D.*'s request for class-wide third-country procedures" makes "a distinction without a difference" because the declaration in *D.V.D.* is the relief Plaintiff seeks. (Doc. 9 at 8 n.4.) It is not. Like the plaintiff in *Pride*, who sought treatment for his own medical conditions rather than reform of the prison medical system, Plaintiff seeks relief tailored to his own circumstances, on a record specific to him. 719 F.3d at 1137–38. A declaration that class members are entitled to notice and an opportunity to be heard does nothing to secure the return of a class member who has already been removed without them. Defendants' concern that individual relief would "allow interference with the ongoing class action" (Doc. 9 at 8 (quoting *McNeil v. Guthrie*, 945 F.2d 1163, 1165 (10th Cir. 1991))), is therefore misplaced.

Defendants contend that courts reaching a contrary conclusion "are wrong." (Doc. 9 at 8.) The Court disagrees and concludes, consistent with other courts in this District and

Circuit, that it is not precluded from considering Plaintiff's claims. *See Smith v. Unknown Party*, No. CV-26-04065-PHX-SHD (JFM), Doc. 19 (D. Ariz. July 31, 2026); *Phong Thanh Nguyen v. Scott*, 796 F. Supp. 3d 703, 729–32 (W.D. Wash. 2025).

**C. First-to-File and Res Judicata**

Defendants next argue the first-to-file rule barred this action while *D.V.D.* was pending and that res judicata bars it now that the *D.V.D.* court entered judgment. (Doc. 9 at 8–10.) Neither doctrine requires dismissal.

The first-to-file rule "is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982). However, the rule is discretionary—it "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Id.* In determining whether to apply the rule, courts consider the chronology of the actions and the similarity of the parties and the issues. *Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). For the reasons explained above, the issues and relief here are distinct from those in *D.V.D.* And sound judicial administration does not favor remitting a removed individual's emergency claim for return-facilitation relief to a class action in another circuit in which only declaratory and APA relief has been awarded.

Res judicata fares no better. Defendants cite *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984), for support that a class judgment binds class members as to the claims it resolves. But *Cooper* also found that the class judgment there did not bar class members' individual claims that were distinct from the class claim. *Id.* at 880. Moreover, the *D.V.D.* court entered declaratory judgment in favor of the class. *See D.V.D.*, 821 F. Supp. 3d at 163–65, 167–68. A declaratory judgment is conclusive as to the matters declared, but it does not preclude a later action for further, coercive relief. *See* 28 U.S.C. § 2202; Restatement (Second) of Judgments § 33 & cmt. c (Am. L. Inst. 1982). Defendants cite no authority for the proposition that a defendant who lost a class action may invoke a

judgment—adverse to Defendants' interests—to shield itself from individual relief consistent with the judgment.[3]

Finally, Plaintiff's prior habeas action does not bar this one. Plaintiff voluntarily dismissed that action, and a voluntary dismissal is without prejudice unless stated otherwise. Fed. R. Civ. P. 41(a)(1)(B), (a)(2). Defendants do not argue otherwise.

**D. Jurisdiction**

Defendants argue 8 U.S.C. § 1252(g), §§ 1252(a)(5) and (b)(9), and § 1252(a)(4) together with FARRA § 2242(d) strip the Court of jurisdiction to adjudicate Plaintiff's claims. (Doc. 9 at 10–12.) None apply here.

**1. Section 1252(g)**

Section 1252(g) bars review of "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." The provision is narrow; it applies "only to three discrete actions" and does not reach all claims arising from removal proceedings. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Applying that construction, the Ninth Circuit has held that § 1252(g) does not bar a purely legal challenge to ICE's decision to remove a noncitizen to a country not designated in his removal order without meaningful notice or an opportunity to present a fear-based claim. *Ibarra-Perez v. United States*, 154 F.4th 989, 996–98 (9th Cir. 2025); *see also Arce v. United States*, 899 F.3d 796, 800–01 (9th Cir. 2018) (holding that § 1252(g) did not bar a claim arising from a removal executed in violation of a judicial stay). Plaintiff does not challenge his removal order or the decision to execute it. His order designates Egypt, to which his removal is deferred. Rather, Plaintiff challenges Defendants' selection of a different, undesignated country without providing Plaintiff notice or an opportunity to be heard. (Doc. 1 ¶¶ 11–12.) Section 1252(g) does not reach that claim.

**2. Sections 1252(a)(5) and (b)(9)**

[3] Defendants' preclusion argument is also internally inconsistent. Defendants maintain both that the *D.V.D.* judgment remains stayed (Doc. 9 at 2, 8) and that the same judgment is sufficiently final to bar this action (*id.* at 9). Defendants cannot have it both ways. (*See* Doc. 10 at 6.)

Sections 1252(a)(5) and (b)(9) channel review of removal orders, and of questions "arising from any action taken or proceeding brought to remove an alien," to the courts of appeals. But § 1252(b)(9) does not reach claims that do not seek review of "an order of removal," "the decision . . . to seek removal," or "the process by which . . . removability will be determined." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018) (plurality opinion)). Nor does it reach claims that are "independent of or collateral to the removal process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016). The Ninth Circuit has applied these principles to hold that §§ 1252(a)(5) and (b)(9) do not bar a challenge to a post-proceeding decision to remove a noncitizen to an undesignated country, because such a decision could not have been reviewed through a petition for review. *Ibarra-Perez*, 154 F.4th at 999–1001.

The same is true here: Plaintiff's removal proceedings concluded with an order designating Egypt and granting deferral, DHS did not appeal, and Equatorial Guinea was never designated. There was no order for Plaintiff to attach a petition for review. Defendants suggest that Plaintiff "could have also made [his] claim through the administrative process" because third-country removals were "highly publicized." (Doc. 9 at 11–12.) But Defendants identify no such process, and the Guidance under which they acted provided none: where the State Department deems a country's assurances credible, "the alien may be removed without the need for further procedures." (Doc. 9-1 at 2–3.) Public awareness of a policy is not notice to an individual of the country to which he will be sent. And it is unrebutted that Plaintiff requested a fear interview and was refused before being carried onto an airplane and for transport to Equatorial Guinea. (Doc. 1 ¶ 1.)

**3. Section 1252(a)(4) and FARRA § 2242(d)**

Section 1252(a)(4) makes a petition for review "the sole and exclusive means for judicial review of any cause or claim under [CAT]." FARRA § 2242(d) withholds jurisdiction "to consider or review claims raised under [CAT] or this section . . . except as part of the review of a final order of removal." Count One is not a claim "under" CAT—it

is a Fifth Amendment due process claim about the procedures Defendants followed before removing Plaintiff to a third country. Plaintiff already holds a CAT deferral order. He does not ask the Court to adjudicate whether he would be tortured in Equatorial Guinea, to review the regulations implementing CAT, or to evaluate Equatorial Guinea's compliance with its own treaty obligations. Nor does the relief ordered here require Defendants to "strong-arm Equatorial Guinea into complying with Equatorial Guinea's CAT obligations." (Doc. 9 at 12.) To the extent Count Two asserts that FARRA independently prohibits Plaintiff's indirect return to Egypt, the Court does not reach that theory.

**IV. Merits**

Because Plaintiff's claims are not barred by *D.V.D.*, principles of preclusion, nor the INA's jurisdictional provisions, the Court turns to the merits.

**A. Count One: Procedural Due Process**

The Ninth Circuit has held that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply . . . for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999) (citing *Kossov v. INS*, 132 F.3d 405, 408–09 (7th Cir. 1998)); *see also Sadychov v. Holder*, 565 F. App'x 648, 651 (9th Cir. 2014) ("[S]hould circumstances change such that Azerbaijan is the designated country of removal, the agency must provide [plaintiff] with notice and an opportunity to reopen his case for full adjudication of his claim of withholding of removal from Azerbaijan."). "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 F. App'x 724 (9th Cir. 2016) (citing *Andriasian*, 180 F.3d at 1041); *see also El Himri v. Ashcroft*, 378 F.3d 932, 938 (9th Cir. 2004) (outlining the statutory provisions for alternative countries of removal which must be considered before turning to removal to a third country unrelated to the individual). The Supreme Court has likewise reaffirmed that, in the removal context, due process requires notice "reasonably calculated, under all the

circumstances, to apprise interested parties" that affords "a reasonable time" to respond. *A.A.R.P. v. Trump*, 605 U.S. 91, 94–95 (2025) (per curiam) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). Plaintiff was within the United States, and in Defendants' custody, when the challenged conduct occurred. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

Here, most importantly, Defendants have not identified any process Plaintiff received before they removed him to Equatorial Guinea. Their declarant attests only that Equatorial Guinea provided diplomatic assurances, that the State Department found them credible, and that ICE followed the Guidance. No. CV-26-02888-PHX-JCH, Doc. 15-1 ¶¶ 5–8. Under the Guidance, those assurances permit removal "without the need for further procedures." (Doc. 9-1 at 2–3.) Defendants maintain that "the government has in fact implemented procedures to protect [Plaintiff's] interest" because the Guidance prohibits removal absent either credible assurances or an individual hearing. (Doc. 9 at 5.) But the assurance route is the absence of individualized process: it provides no notice of the country of removal and no opportunity to be heard. The Court finds this insufficient to abide by due process prior to removing Plaintiff to a third country. *See Smith*, No. CV-26-04065-PHX-SHD (JFM), Doc. 19 at 6 (holding that reliance on diplomatic assurances "is insufficient process before removing Petitioner to a third country").

Defendants also contend Plaintiff "focuses on the lack of notice regarding the country of removal as if [his] fear depends on receiving that notice." (Doc. 9 at 11.) But notice is the predicate for the opportunity to be heard; a person cannot raise a fear-based claim against removal to a country he does not know he will be sent to. In any event, Plaintiff did express fear and ask for a fear interview prior to removal, and he was refused. (Doc. 1 ¶ 1; Doc. 1-1 at 27.)

The Court's conclusion rests on binding Ninth Circuit authority and does not depend on the *D.V.D.* judgment. It is, however, consistent with that judgment, which declared that

class members have the right to meaningful notice and a meaningful opportunity to raise a country-specific claim before removal to any third country, 821 F. Supp. 3d 102, and which the First Circuit affirmed, *D.V.D.*, 2026 WL 2797801.

Accordingly, Plaintiff has established actual success on Count One. Plaintiff's removal to Equatorial Guinea without notice and a meaningful opportunity to raise a country-specific claim against removal there violated the Due Process Clause of the Fifth Amendment. *Andriasian*, 180 F.3d at 1041.

**B. Counts Two and Three**

Count Three seeks, in the alternative to Count Two, mandamus and equitable relief requiring Defendants to take steps within their control to remedy the consequences of Plaintiff's unlawful removal. (Doc. 1 ¶¶ 53–54.) "The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity . . . ." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). Having found a due process violation, the Court grants Count Three to the extent it seeks equitable relief requiring Defendants to facilitate Plaintiff's return, as set forth in Part V. The Court does not reach Plaintiff's alternative mandamus and 5 U.S.C. § 706(1) theories.

Count Two asserts Plaintiff's removal violated the APA because it exceeded Defendants' authority under 8 U.S.C. § 1231(b)(2), FARRA § 2242, and 8 C.F.R. §§ 1208.17 and 1208.18. (Doc. 1 ¶¶ 45-51.) Because Counts One and Three afford Plaintiff complete relief, the Court will deny Count Two as moot.

**V. Remedy**

**A. Redressability, Custody, and Foreign Affairs**

Defendants argue Plaintiff's injuries are not redressable because he is in the custody of Equatorial Guinea rather than the United States, that any order would intrude on the Executive's conduct of foreign affairs, and that the Court may not second-guess the diplomatic assurances Equatorial Guinea provided. (Doc. 9 at 12–16.) The Court is not persuaded.

As an initial matter, this is not a habeas corpus action. Instead, Plaintiff invokes

28 U.S.C. § 1331, the APA, and 28 U.S.C. § 1361, none of which requires that he be in the custody of the United States. (Doc. 1 ¶¶ 7–8.) The habeas decisions on which Defendants rely, which concern former Guantanamo detainees, are inapposite. *See, e.g.*, *In re Petitioners Seeking Habeas Corpus Relief in Rel. to Prior Detentions at Guantanamo Bay*, 700 F. Supp. 2d 119, 132 (D.D.C. 2010).

In terms of redressability, a plaintiff must show it is "'likely, as opposed to merely 'speculative,' that [his] injury will be 'redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 38, 43 (1976)). He need not show that relief will remedy *every* injury. *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982).

The Supreme Court has approved precisely the relief at issue for a person removed in violation of law and held in a foreign sovereign's custody. *See Noem v. Abrego Garcia*, Ct. 1017, 1018 (2025) (per curiam). In *Abrego Garcia*, the Court held that the district court's order "properly requires the Government to 'facilitate' Abrego Garcia's release from custody in El Salvador and to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador." *Id.* The Government itself has represented that noncitizens who are removed and later prevail "can be afforded effective relief by facilitation of their return." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The district court presiding over the *D.V.D.* class action ordered the same relief on closely analogous facts. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, 784 F. Supp. 3d 401 (D. Mass. 2025). There, an immigration judge granted plaintiff O.C.G. withholding of removal to his native Guatemala. *Id.* at 407. Two days later, without notice, immigration officers placed him on a bus to Mexico, where he had previously been held for ransom and raped, and refused his request to call his attorney. *Id.* Mexico then gave him a choice between indefinite detention and return to Guatemala, and he returned to the very country from which he had been granted protection. *Id.* The court held that O.C.G. was likely to succeed on his due process claim and that "the appropriate remedy is return." *Id.* at 408. The court rejected the argument that O.C.G.'s after-the-fact awareness of his destination

channeled his claim into the petition-for-review process. It explained that the claim "arose the moment he was denied notice," and that "the most obvious remedy is to go back and do it over." *Id.* at 410. The court therefore ordered the government to "take all immediate steps," in coordination with O.C.G.'s counsel, to facilitate his return, and to file a status report. *Id.* at 412.

Plaintiff's circumstances closely track O.C.G.'s. He holds protection from removal to his home country, was removed without notice to a third country, and faces return to the country from which he was protected. The principal difference is custody. The *D.V.D.* court observed that facilitation carried "less baggage" there because O.C.G. was "not held by any foreign government." *D.V.D.*, 784 F.Supp.3d at 412 n.10. Plaintiff, by contrast, is in Equatorial Guinea's custody. But that difference bears on what facilitation requires, not on whether it is available. The Supreme Court has approved an order requiring the government to facilitate the release of a person held in a foreign prison. *Abrego Garcia*, 145 S. Ct. at 1018.

Indeed, much of the relief Plaintiff seeks lies entirely within Defendants' control: travel documentation, transportation, admission or parole at a port of entry, and the handling of his case once he returns. And the record does not leave Equatorial Guinea's cooperation to guesswork. Defendants placed Plaintiff in that country's custody under an agreement with its government, for which, according to a Senate committee minority report, the United States paid $7.5 million. (Doc. 1-1 at 100, 111.) Equatorial Guinean officials have repeatedly told Plaintiff and the other deportees that they are not wanted and should leave the country. (O'Donnell Aff. ¶ 5(i)-(j); Doc. 1-1 at 47–48.) And Equatorial Guinea has routinely sent deportees onward from Malabo. (O'Donnell Aff. ¶ 5(d); Doc. 1-1 at 36.) Plaintiff has thus adduced facts showing that the choices of the foreign government on which relief partly depends are likely to "permit redressability of injury." *Lujan*, 504 U.S. at 562.

To the extent Defendants argue Plaintiff's request for relief constitutes an improper incursion on foreign affairs, the Court is mindful of "the deference owed to the Executive

Branch in the conduct of foreign affairs." *Abrego Garcia*, 145 S. Ct. at 1018. For that reason, the Court orders Defendants to facilitate Plaintiff's return, not to affirmatively effectuate it; it does not prescribe the content of any diplomatic communication; and it directs no act by the Government of Equatorial Guinea. Within those bounds, *Abrego Garcia* confirms that the relief is within the Court's authority. Defendants' reliance on *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936), and *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952), does not alter that conclusion.

Defendants next argue that diplomatic assurances are not judicially reviewable. (Doc. 9 at 14–15 (citing *Munaf v. Geren*, 553 U.S. 674, 702 (2008), and *Kiyemba v. Obama*, 561 F.3d 509, 514 (D.C. Cir. 2009)).) But Plaintiff does not ask the Court to review the State Department's credibility determination or to pass judgment on Equatorial Guinea's justice system. (Doc. 10 at 8.) And the Court's holding does not rest on any assessment of those assurances. It rests on the absence of any individualized notice and opportunity to be heard before removal—a question about what process the United States owes a person in its custody before removing him, which binding Ninth Circuit authority governs. *Munaf* is also distinguishable. It concerned American citizens who voluntarily traveled to Iraq, were detained there, and faced prosecution there for crimes allegedly committed there, implicating Iraq's sovereign authority to punish offenses within its borders. *See* 553 U.S. at 692–95. *Kiyemba* concerned the transfer of detainees held at Guantanamo Bay. *See generally* 561 F.3d 509. Neither involved the removal under the Immigration and Nationality Act of a person whom an immigration judge had granted protection, to a country with which he had no connection, under a statutory and regulatory scheme that itself contemplates country-specific adjudication.

Finally, Defendants contend the cases ordering facilitation involved conceded errors, and that Plaintiff asks the Court to "put the cart before the horse" by ordering facilitation "before there has been any finding that the alien's removal was unlawful." (Doc. 9 at 15–16.) Consolidation answers that objection. The Court has made that finding.

. . . .

**B. Injunctive Relief Is Warranted**

**1. Irreparable Injury**

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The injury here goes well beyond the deprivation of process itself. The unrebutted record shows that, since his removal, Plaintiff has been confined under armed guard, assaulted, held at gunpoint, and, most recently, arrested, hooded, beaten, and held incommunicado, reportedly without food or water. (O'Donnell Aff. ¶¶ 3, 5, 7–9.) "[T]he risk of torture, beatings, and even death clearly and unequivocally supports a finding of irreparable harm." *Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 518 (D. Md. 2025) (quoting *J.G.G. v. Trump*, 772 F. Supp. 3d 18, 42 (D.D.C. 2025)). Plaintiff seeks no damages.

**2. Balance of Hardships and Public Interest**

When the government is a party, these factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). The government "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). And "there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken*, 556 U.S. at 436. Defendants' legitimate interest in enforcing the immigration laws is not impaired: facilitating Plaintiff's return does not prevent Defendants from removing him in the future in compliance with the Constitution and the relevant statutes. Nor does the relief require Defendants to take any step outside their own control. The equity and public interest factors strongly favor relief.

**C. Scope of Relief**

Consistent with *Abrego Garcia*, Defendants must facilitate Plaintiff's release from custody in Equatorial Guinea and his return to the United States and must ensure his case is handled as it would have been had he not been improperly sent to Equatorial Guinea. 145 S. Ct. at 1018. Defendants' own policy defines facilitating a return to include issuing

a boarding letter permitting travel and, if warranted, paroling the person into the United States at a port of entry. (Doc. 1 ¶ 20 (citing ICE Policy Directive 11061.1 § 3.1).)[4] The specific steps required are set out below.

Restoring Plaintiff to the position he occupied before removal means, at a minimum, that the IJ's grant of deferral of removal to Egypt remains in effect unless and until terminated in accordance with 8 C.F.R. § 1208.17(d), and that any determination concerning Plaintiff's custody or removal is made as it would have been had he not been removed. It also means that Defendants may not again remove Plaintiff to a third country without the process the Due Process Clause requires. The Court therefore enjoins such a removal on the same terms as in *Smith*. *See* No. CV-26-04065-PHX-SHD (JFM), Doc. 19.

The Supreme Court in *Abrego Garcia* observed that "the Government should be prepared to share what it can concerning the steps it has taken and the prospect of further steps." 145 S. Ct. at 1018. Plaintiff has been held incommunicado since September 11, 2026, and his counsel cannot locate him. Regular reporting is therefore necessary for the Court to monitor compliance.

**D. Security**

Because the Court grants permanent rather than preliminary relief, Federal Rule of Civil Procedure 65(c) does not apply, and Defendants have not requested a bond. In any event, the Court would exercise its discretion to require no security. *See Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

**E. Defendants' Request for a Stay**

Defendants ask the Court to stay any relief pending appeal or, at a minimum, for fourteen days to permit them to seek a stay from the court of appeals. (Doc. 9 at 16.) In determining whether a stay is appropriate, the Court considers "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will

[4] The Court does not adopt that Directive as the measure of Defendants' obligation, which arises from their unlawful removal of Plaintiff. But the Directive confirms that the necessary steps are familiar and within Defendants' operational authority.

substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434 (internal quotation marks omitted).

Defendants offer no argument on these factors beyond their merits arguments, which the Court has rejected. They identify no irreparable injury from facilitating Plaintiff's return, which forecloses no lawful future action. By contrast, each day of delay prolongs Plaintiff's incommunicado detention in conditions the unrebutted record describes as dangerous. The request is therefore denied. *See* Fed. R. Civ. P. 62(c)(1). Defendants may seek a stay from the court of appeals. *See* Fed. R. App. P. 8(a)(2).

**VI. Order**

**IT IS ORDERED:**

1. Pursuant to Federal Rule of Civil Procedure 65(a)(2), the trial on the merits of the Complaint (Doc. 1) is advanced and consolidated with Plaintiff's Emergency Motion for a Temporary Injunction (Doc. 2).

2. Plaintiff's Emergency Motion for a Temporary Injunction (Doc. 2) is **GRANTED** to the extent set forth in this Order.

3. Count One of the Complaint is **GRANTED**. Count Three is **GRANTED** to the extent it seeks equitable relief requiring Defendants to facilitate Plaintiff's return. Count Two is **DENIED AS MOOT**.

4. The Court **DECLARES** that Defendants' removal of Plaintiff to Equatorial Guinea without notice of the country of removal and a meaningful opportunity to raise a country-specific claim against removal there violated the Due Process Clause of the Fifth Amendment.

5. Defendants must facilitate Plaintiff's release from custody in Equatorial Guinea and return to the United States and must ensure his case is handled as it would have been had he not been improperly sent to Equatorial Guinea. Defendants must take all reasonable steps within their control to do so, including, at a minimum:

    a. taking all available steps to facilitate Plaintiff's release from custody in Equatorial Guinea;

b. issuing or arranging any travel documentation necessary for Plaintiff to travel to the United States, including a boarding letter;

c. arranging Plaintiff's transportation from Equatorial Guinea to a United States port of entry at Defendants' expense;

d. admitting or paroling Plaintiff into the United States upon his arrival at a port of entry; and

e. coordinating with Plaintiff's counsel regarding the foregoing.

6. Nothing in this Order directs the manner in which Defendants conduct diplomatic relations with Equatorial Guinea or directs any act by the Government of Equatorial Guinea.

7. Upon Plaintiff's return, the immigration judge's grant of deferral of removal to Egypt remains in effect unless and until terminated in accordance with 8 C.F.R. § 1208.17(d), and any determination concerning Plaintiff's custody or removal must be made as it would have been had Plaintiff not been removed to Equatorial Guinea.

8. Defendants, their officers, and agents are **ENJOINED** from removing Plaintiff from the United States to any third country without first providing him notice of the country to which they intend to remove him and a meaningful opportunity to raise a country-specific claim against removal before a neutral judge, including appeal of any decision or part thereof in that process.

9. Defendants, their officers, and agents are **ENJOINED** from requesting, arranging, funding, or otherwise facilitating Plaintiff's transfer from Equatorial Guinea to Egypt.

10. Within **three (3) days** of the date of this Order, and **every seven (7) days thereafter** until Plaintiff's return to the United States or further order of the Court, Defendants must file a status report, supported by a declaration from an official with personal knowledge, stating: (a) the information known to Defendants about Plaintiff's current location, custodial status, and physical condition; (b) the steps Defendants have taken since the prior report to comply with paragraph 5; and (c) the further steps Defendants

intend to take and the anticipated timeline. Plaintiff may respond to each status report within three (3) days.

11. Defendants must preserve all documents and electronically stored information concerning Plaintiff's removal to Equatorial Guinea, the diplomatic assurances on which they relied, and their efforts to comply with this Order.

12. Defendants' request for a stay pending appeal and for a fourteen-day stay (Doc. 9 at 16) is **DENIED**.

13. No security is required under Federal Rule of Civil Procedure 65(c).

14. The Court retains jurisdiction to enforce this Order.

15. The Clerk of Court must enter judgment accordingly.