**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

A.M.A.S.,

Plaintiff,

v.

Markwayne Mullin, et al.,

Defendants.

No. CV-26-06601-PHX-JCH

**ORDER**

On October 6, 2026, the Court granted Plaintiff's request for equitable relief in the form of requiring Defendants to facilitate his return from Equatorial Guinea by taking "all reasonable steps within their control." (Doc. 14 at 21; Doc. 15.) The Court further ordered:

> Within three (3) days of the date of this Order, and every seven (7) days thereafter until Plaintiff's return to the United States or further order of the Court, Defendants must file a status report, supported by a declaration from an official with personal knowledge, stating: (a) the information known to Defendants about Plaintiff's current location, custodial status, and physical condition; (b) the steps Defendants have taken since the prior report to comply with paragraph 5; and (c) the further steps Defendants intend to take and the anticipated timeline. Plaintiff may respond to each status report within three (3) days.

(*Id.*)

Defendants filed their first status report on October 9, 2026: "Respondents are working collaboratively with Petitioner's counsel who shared valuable information to help Respondents attempt to locate and contact Petitioner. Respondents had a conference with the relevant stakeholders within the government and are beginning the process to facilitate

Petitioner's return." (Doc. 16.) The status report did not include a declaration, but Defendants stated they would file one with their next update.

On October 16, 2026, Defendants filed their second status report, stating that Defendants' counsel is "engaging in daily check-ins and meetings with [Plaintiff's] counsel and the assigned points of contact with the relevant departments. Currently [Defendants] are attempting to confirm Petitioner's exact location and custody status with personnel in Equatorial Guinea." (Doc. 17.) The update did not include a declaration but stated the Department of Homeland Security was preparing one, to be filed the following Monday. (*Id.*)

That Monday, October 19, 2026, Defendants filed a status update informing the Court that Defendants are coordinating return efforts with both the State Department and DHS, that Defendants still had not confirmed Plaintiff's exact location, and that Defendants' counsel is "working to streamline communication between Petitioner's counsel and [DHS, U.S. Immigration and Customs Enforcements ("ICE"), Enforcement and Removal Operations ("ERO")]". (Doc. 18.) Defendants attached a declaration from Andrea, Chiriboga Villacis, a Deportation Officer with DHS, ICE, ERO. (Doc. 18-1.) Chiriboga Villacis stated they examined ICE official records associated with A.M.A.S. to prepare the declaration. (*Id.* at 2.) Chiriboga Villacis also stated that on October 9, 2026, "ICE ERO personnel contacted an ERO Attaché to request assistance in verifying whether Petitioner was located at Hotel Bamy." (*Id.* at 3.) That same day, the ERO Attaché advised he submitted a request with his contacts in Equatorial Guinea and would provide additional information as it became available. (*Id.*) As of October 19, 2026, ERO personnel had not received any results. (*Id.*) The declaration finally stated: "ERO is actively facilitating and coordinating the steps necessary to support Petitioner's return to the United States. These efforts include coordination regarding any required parole authorization, travel arrangements, and carrier documentation," which "remain contingent on confirmation of Petitioner's identity, location, status, and availability for travel." (*Id.*)

On October 20, 2026, Plaintiff's counsel filed a report, raising various concerns. First, the report stated Defendant's declarant "appears to have no personal knowledge of

the steps being taken to facilitate A.M.A.S.'s return." (Doc. 20 at 1.) The report also states that beginning on October 14, 2026, and proceeding for each business day thereafter, Plaintiff's counsel emailed Defendants' counsel repeated concerns that A.M.A.S.'s health was rapidly deteriorating and required immediate medical intervention and provided contact information of a person aiding those detained at Hotel Bamy. (*Id.* at 2–3.) The last update, on October 19, 2026, informed counsel that A.M.A.S.'s "medical wellbeing remain[ed] unchanged" and he was at Hotel Bamy. (*Id.* at 3.) The report also undercuts Defendants' report that they do not know A.M.A.S.'s location or have access to him, stating "there is extensive reporting on the agreement between the Equatorial Guinean government and the United States," there has been direct communication between the U.S. and the Equatorial Guinean Vice President since A.M.A.S. was first removed, and there has been ample opportunity for the United States to direct a plane to Malabo, where A.M.A.S. is located. (*Id.*) The report finally requests the Court not accept Defendants' "attempts to justify their delay" because the "government plainly already has the information requested" in its last status report, including Plaintiff's counsel's contact information and the contact information for an individual in Equatorial Guinea who could assist them, and yet "apparently has taken no action with it." (*Id.* at 4–5.)

The Court shares the concerns of Plaintiff's counsel that Defendants have failed to identify "real concrete steps they have taken to comply with" the Court's Order issued fifteen days ago. (Doc. 20 at 4.) Further, Plaintiff's counsel has continuously provided Defendants' counsel with updates on A.M.A.S.'s location and wellbeing, and yet Defendants' status reports do not indicate that Defendants are taking any action on this information. Instead, it appears Defendants made a single attempt on October 9, 2026—***twelve days ago***—to verify Plaintiff's location and identity, but have made no additional attempts since.

Nor did Defendants' first or second status reports include the required declarations. The declaration Defendants attached to their most recent status report appears to be from an individual with no first-hand knowledge of the efforts to facilitate A.M.A.S.'s return. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced

sufficient to support a finding that the witness has personal knowledge of the matter.”). At best, Chiriboga Villacis has personal knowledge as to the contents of the records reviewed but is not qualified to attest that the events described therein actually occurred or are accurately reflected, much less that the summary of them accurately reflects the totality of facts related to efforts to facilitate Plaintiff’s return to the United States. Moreover, Defendants do not provide the records or any other documents corroborating the declaration, and it thus contains hearsay without an exception, violates the best evidence rule, and does not rely on authenticated evidence. *See* Fed. R. Evid. 602, 802, 901, 1002. Defendants have, therefore, produced no reliable or admissible evidence to comply with the Court’s October 6, 2026 Order.

Finally, the Court has received Defendants’ October 20, 2026 Notice of Interlocutory Appeal to the United States Court of Appeals for the Ninth Circuit.[1] (Doc. 19.) Defendants appeal the Court’s October 6, 2026 Order granting Counts One and Three of the Complaint and declaring that Defendants’ removal of Plaintiff to Equatorial Guinea was unlawful (Doc. 14 at 20), as well as the corresponding judgment (Doc. 15). When a notice of appeal is filed, jurisdiction over the matters being appealed typically transfers from the district court to the appeals court. *Mayweathers v. Newland*, 258 F.3d 930, 935 (9th Cir.2001). Nonetheless, absent a stay order, the district court retains jurisdiction to enter orders enforcing its judgment during the pendency of an appeal. *See* Fed. R. Civ. P. 62(c); *Lara v. Sec’y of Interior of U.S.*, 820 F.2d 1535, 1543 (9th Cir.1987) (“The district court may issue orders pending appeal to enforce its judgment.”). It does not appear Defendants have sought or received a stay from the Ninth Circuit.

The Court retains jurisdiction to enter an order enforcing its previous judgment in Plaintiff’s favor. Further, to ensure Defendants’ compliance with the Court’s October 6, 2026 Order requiring Defendants to facilitate Plaintiff’s return to the United States by taking “all reasonable steps within their control” (Doc. 14), the Court will order Defendants provide a supplemental status report within 24 hours and daily status reports every weekday

[1] Because the Court entered final judgment on October 6, 2026, it does not appear that this appeal is interlocutory.

thereafter.

Accordingly,

**IT IS ORDERED** that by **October 22, 2026 on or before 5:00 PM**, Defendants must file a **supplemental status report** with the following information:

(1) The **specific acts**, if any, Defendants have taken ***each day*** to facilitate Plaintiff's return since their October 9, 2026 contact with the ERO Attaché;

(2) The **specific acts** taken by Defendants to coordinate Plaintiff's "required parole authorization, travel arrangements, and carrier documentation";

(3) The **specific acts** Defendants will take next to locate and identify Plaintiff independent of the ERO Attaché;

(4) A supplemental declaration from declarant Andrea Chiriboga Villacis detailing their ***personal involvement***, if any, in facilitating Plaintiff's return;

(5) If Defendants' prior declarant has had no such personal involvement, a supplemental declaration from an individual with ***personal involvement and first-hand knowledge*** of the steps Defendants have taken over the past fifteen days and will continue taking to facilitate Plaintiff's return.

**IT IS FURTHER ORDERED** that beginning October 23, 2026, and continuing each weekday thereafter until further order of the Court, Defendants shall file, on or before 5:00 PM, a declaration made by an individual with ***personal knowledge*** as to any information regarding: (1) the current physical location and custodial status of A.M.A.S.; (2) what steps, if any, Defendants have taken to facilitate his immediate return to the United States; and (3) what additional steps Defendants will take, and when, to facilitate his return.

Dated this 21st day of October, 2026.

John C. Hinderaker
United States District Judge