**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

A.M.A.S.,
Petitioner,
v.
Markwayne Mullin, et al.,
Respondents.

No. CV-26-06601-PHX-JCH

**DECLARATION OF**
Fernando Valenzuela

I, Fernando Valenzuela, hereby declare under the penalty of perjury:

1. I am currently employed with the U.S. Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO). I am authorized to search records relating to detainees.

2. I am an Assistant Field Office Director assigned to the Imperial Regional Detention Facility in Calexico, California and the San Luis Regional Detention Center in San Luis, Arizona. I am responsible for, inter alia, managing the cases of aliens who are in immigration proceedings. I make this declaration based on my role and knowledge of A.M.A.S., A099 404 612 ("Petitioner"), file which contains electronic data including case records.

3. I have experience utilizing ICE record systems to obtain information regarding specific aliens. ICE maintains electronic and paper records on aliens in the course of its regularly conducted business activity. These records are made in the course of regularly conducted business activity at or near the time of relevant events by a person with knowledge of these events. In preparing this declaration, I have examined ICE official records, including the Enforce Alien Removal Module ("EARM"). EARM is the ICE electronic database utilized by ERO to maintain information regarding the custody and removal status of aliens. EARM is the electronic database ordinarily relied upon to ascertain an alien's immigration and criminal history, current case status, and plans for

removal, if any.

4. I provide this declaration based on my personal knowledge, belief, reasonable inquiry, and information obtained from various records, systems, databases, information portals maintained and relied upon by DHS in the regular course of business, information obtained from other individuals employed by DHS, and information I acquired during the performance of my official duties.

5. I am aware that the above-captioned Complaint and Emergency Motion for Temporary Restraining Order have been filed in the U.S. District Court.

6. I am familiar with the facts and circumstances regarding A.M.A.S. ("Petitioner") and provide the following information regarding efforts taken to facilitate Petitioner's return to the United States.

7. This declaration is supplemental to the previous declarations provided.

8. On October 23, 2026, I contacted the ERO Attaché by email and requested any updates on the facilitation of Petitioner's return. The Attaché stated that his office is working with U.S. Department of State personnel at the U.S. Embassy in Equatorial Guinea to obtain the items and documentation that Embassy staff need to issue a transportation letter. Also on October 23, 2026, I emailed the ICE Headquarters Joint Parole Operations Division (JPOD) to request expedited adjudication of the Significant Public Benefit Parole request I previously submitted. I understand that a supervisory ICE official assigned to JPOD has the authority to adjudicate the request, determine whether the request is issued on an expedited or emergency basis, and to determine how quickly JPOD reviews it. As of the execution of this declaration, JPOD has not responded.

9. On October 23, 2026, ICE Air Operations informed me that a charter mission had stopped in Equatorial Guinea to repatriate two Equatorial Guinean nationals. This was not a third country removal. According to that information, the aircraft also carried a large number of other aliens onboard from other countries and would make subsequent stops in other countries. The Petitioner could not return on this flight because ICE had not yet adjudicated the parole request, and the return transportation letter had not been issued. The

aircraft, which was operating on a scheduled mission, could not wait for those steps to be completed.

10. In the declaration provided by Deportation Officer (DO) Andrea Chiriboga Villacis on October 22, 2026, Paragraph 28 is accurate. There was no third country removal flight scheduled to Equatorial Guinea, as stated in the declaration. The charter flight to Equatorial Guinea on October 23, 2026, was a repatriation flight for two non-third country removals, citizens of Equatorial Guinea. According to the ICE Air Operations schedule, aircraft N703KW landed at Malabo International Airport in Malabo, Equatorial Guinea, on October 23, 2026, at 1:35 p.m. local time (5:35 a.m. MST). The aircraft departed at 3:35 p.m. local time (7:35 a.m. MST) to Bujumbura International Airport in Bujumbura, Burundi.

11. In her declaration dated October 22, 2026, DO Chiriboga stated in Paragraph 27: "On October 22, 2026, a U.S. Embassy official in Malabo advised ERO personnel that the official had spoken with Petitioner by telephone and confirmed that Petitioner was located at Hotel Bamy in Malabo, Equatorial Guinea." This declaration seeks to clarify that statement. On October 22, 2026, a U.S. Embassy official in Malabo advised ERO personnel that the official had spoken by telephone with an Equatorial Guinean government official, who confirmed that Petitioner was located at Hotel Bamy in Malabo, Equatorial Guinea.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed on: 10/23/2026

FERNANDO VALENZUELA
Digitally signed by FERNANDO VALENZUELA
Date: 2026.10.23 16:56:05 -07'00'

Fernando Valenzuela
Assistant Field Office Director
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement