**GREEN | EVANS-SCHROEDER, PLLC**
130 W. Cushing Street
Tucson, AZ 85718
Tel. (520) 882-8852
Fax (520) 882-8843

**Jesse Evans-Schroeder** | Arizona Bar No. 027434
Email: jesse@arizonaimmigration.net

**Matthew H. Green** | Arizona Bar No. 020827
Email: matt@arizonaimmigration.net

**Ami Hutchinson |** Arizona Bar No. 039150
Email: ami@arizonaimmigration.net

*Attorneys for Petitioner*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| A.M.A.S.,<br><br>Plaintiff,<br><br>vs.<br><br>Markwayne Mullin, *et al.*,<br><br>Defendants. | No. CV-26-06601-PHX-JCH<br><br>**PLAINTIFF'S RESPOSE TO DEFENDANTS' STATUS REPORT UPDATE #6** |

Plaintiff respectfully submits this response to Defendants' Status Update #6 (Doc. 30).

Although Defendants report some additional steps toward Plaintiff's return, their filing still does not comply with several express requirements of the Court's

October 27, 2026 Order (Doc. 29). Most importantly, the Court required Defendants to address each of the eleven remaining steps identified in Part III of the Order and, for each step, to state: **(1)** its current status, including every act taken since the October 26, 2026 declaration, identifying the individual who took it by name and title and the date on which it was taken; **(2)** the date by which Defendants expect to complete it; **(3)** the name, title, and component of the official responsible for completing or authorizing it; and **(4)** if the step could not be completed in time for Plaintiff to travel within the authorized parole period, the specific impediment, who is imposing it, and what Defendants are doing to remove it. Doc. 29 at 8. The Court further ordered Defendants to state Plaintiff's projected departure and arrival dates; and to report Plaintiff's current location and physical condition, including how that information was obtained and verified. *Id.* at 8-9.

Status Update #6 does not satisfy those requirements.

## I. Status Update #6 Does Not Comply With the Court's October 27 Order.

Defendants' filing provides some additional facts, but it still does not supply the step-specific information the Court ordered. For multiple outstanding steps, Defendants do not identify the responsible official by **name, title, and component**, instead referring only to "appropriate personnel," "Embassy

personnel," "appropriate authorities," and "appropriate medical and operational personnel." Doc. 30-1 ¶¶ 12, 17, 19-20, 37, 47-50. That is not what the Court ordered. Doc. 29 at 8-9.

Likewise, Defendants repeatedly fail to provide actual completion dates for remaining tasks. Instead, they offer only open-ended formulations such as "as soon as practicable," "as expeditiously as possible," or "before" the tentative flight date, all subject to unspecified contingencies. *See* Doc. 30-1 ¶¶ 12, 17-18, 33, 48-50. The Court did not order general assurances of ongoing efforts. It ordered step-by-step reporting with concrete dates, responsible officials, and specific impediments. Doc. 29 at 8-9.

The deficiencies are especially apparent in several of the eleven required areas:

1. **Port of entry.** Defendants state only that Washington Dulles has been "tentatively identified," but they do not identify who will finalize the port of entry, when it will be finalized, or what specific impediment prevents final designation. Doc. 30-1 ¶ 4.
2. **Authorization memorandum and transmittal.** Defendants state that the Form I-512 has been approved, and that they intend to transmit the tentative itinerary and approved Form I-512 to the Consular Section on October 28. Id. ¶¶ 8, 10-11. But the Court specifically required reporting on the preparation and transmittal of the ICE authorization memorandum and associated materials. Doc. 29 at 7. Status Update #6 does not say whether that memorandum has been drafted, completed, or transmitted, who is

responsible for it, when that step will be completed, and the reasons for the apparent delay.

3. **Security review.** The Court required Defendants to report on "[c]ompletion of any required security review and resolution of any derogatory information," and to confirm if that review was completed in connection with parole adjudication. *Id.* Status Update #6 does not do so. It notes only that Significant Public Benefit Parole was approved. Doc. 30-1 ¶¶ 7, 13.
4. **Contact with Plaintiff, photographs, Embassy access, and safe passage.** Defendants still do not state that any United States official has actually established contact with Plaintiff. They report only that a photograph is required, that a State Department delegation was expected to visit the location where Plaintiff is being held, and that a Regional Security Officer "may" be able to obtain a photograph. Id. ¶¶ 15-17. They do not identify any completed request to Equatorial Guinean authorities for safe passage, escort, release for Embassy access, or departure. They do not even identify any initial communication to Equatorial Guinean authorities in order to schedule these mandated steps.
5. **Travel letter and sealed envelopes.** Defendants state that the Embassy has not issued a travel letter and that issuance depends on Embassy review and documentation requirements. *Id.* ¶¶ 32-33. They do not provide a completion date, identify the official responsible for issuance, or address the sealed envelopes the Court expressly referenced. Doc. 29 at 7.
6. **Equatorial Guinean authorization for release and departure.** Defendants state only that they have not received confirmation that local procedures have been completed. Doc. 30-1 ¶¶ 36-37. They do not identify what specific procedures remain, which entity is imposing them, what requests have been made, by whom, or on what dates.

7. **Transportation.** Defendants report only a **tentative** commercial reservation subject to travel-letter issuance, ticketing, carrier acceptance, local authorization, and other arrangements. *Id.* ¶¶ 5-6, 42. They do not identify when transportation will be fully ticketed and booked, who is responsible for final authorization, or whether transportation by **DHS-owned aircraft** was considered, as the Court specifically directed. Doc. 29 at 7.

8. **Medical evaluation and fitness to travel.** Defendants state only that they are coordinating to determine whether any medical evaluation, clearance, support, or escort is required. Doc. 30-1 ¶¶ 47-50. They do not report Plaintiff's physical condition, whether any medical evaluation has occurred, whether Plaintiff has been found fit to travel, who is responsible for making those determinations, or a plan if Plaintiff is too unwell to board a commercial airplane – which would require at least one plane transfer, if not two -- back to the United States. They also do not identify on what authority Plaintiff can pass through other countries in order to board various legs of his flight. There are not direct commercial flights between Malabo and the United States, yet DHS has apparently done nothing to address these issues.

9. **CBP coordination.** Defendants say only that they have not completed coordination with CBP because the final itinerary and port of entry have not been finalized, and that they will coordinate with CBP later. *Id.* ¶¶ 51-52. They do not identify the responsible official, any act already taken toward this step, or the date by which CBP coordination will be completed.

10. **Deferral of removal and future custody/removal determinations.** Defendants state only that ICE records reflect that an Immigration Judge granted deferral of removal to Egypt on October 2, 2025, and that ERO will

ensure future custody and removal determinations are made consistent with the Court's direction and the applicable case status. *Id.* ¶¶ 56-57. The Court specifically required confirmation that the deferral remains in effect and that future determinations will be made as though the April 28, 2026 removal had not occurred. Doc. 29 at 7-8. Defendants do not say that.

11. **Coordination with Plaintiff's counsel.** Defendants again offer only a generalized statement about "daily check-ins and meetings," not contemporaneous coordination as to each of the eleven remaining steps. Doc. 30 at 1; Doc. 29 at 8.

Finally, Defendants still do not comply with the Court's separate direction that they report Plaintiff's current physical condition and explain how his location and condition were obtained and verified. Doc. 29 at 8-9. Status Update #6 states only that Plaintiff "remains in immigration holding in Equatorial Guinea." Doc. 30-1 ¶ 3. It says nothing about his physical condition and nothing about how that information was obtained or verified.

## II. Defendants' Representation Regarding Available Government Transportation Requires Immediate Clarification.

Status Update #6 states that, on October 27, 2026, ERO Attaché Andrea Lichtenstein advised that "no ICE charter is currently planned" and that a charter, if one became available, would likely occur only after Plaintiff's parole period expires on November 11, 2026. Doc. 30-1 ¶ 41.

Plaintiff has information indicating that a government-contracted flight departed Mesa Gateway Airport, in Mesa, Arizona, at 8:47 a.m. MST on today's

date. It is anticipated to arrive at San Juan, Puerto Rico at 5:07 p.m. AST, and then depart to Conakry, Guinea, at 5:12 pm. AST, arriving in Guinea at 7:27 a.m. GMT on Thursday, October 29, 2026. The aircraft is registered as N50JE, operated by Talon Air, with callsign VELUX13. "VELUX" is an ICE callsign. Exhibit A (FlightAware.com printout, accessed on October 28, 2026).

That issue warrants immediate clarification. The Court specifically identified transportation "by commercial carrier, ICE charter, or DHS-owned aircraft" as an outstanding required step and only yesterday noted its concern that Defendants had failed to address apparently available government transportation. Doc. 29 at 5, 7. In those circumstances, Defendants should be required to clarify promptly whether the apparent ICE flight that departed Arizona today is operated, contracted, or otherwise utilized by ICE or DHS; its destination and routing; when Defendants became aware of it; whether transporting Plaintiff on that aircraft was considered; and, if not, why not.

### III. The Accompanying Declaration Does Not Satisfy the Court's Personal-Knowledge and Identification Requirements.

The Court expressly ordered that "each status report must be supported by a declaration made under penalty of perjury by an individual with personal knowledge of the matters stated." Doc. 29 at 9. The Court further directed that "[w]here information is obtained from another official, the report must identify that official by name and title." *Id.*

The declaration filed with Status Update #6 does not satisfy those requirements. Officer Chiriboga Villacis states that her declaration is based not only on personal knowledge, but also on her “belief,” “reasonable inquiry,” information from agency records and databases, and “information obtained from other individuals employed by DHS.” Doc. 30-1 ¶ 1. Material assertions are then attributed to other officials, including Jose L. Rosiles regarding the commercial itinerary, “Consular Officer Anna” regarding the photograph requirement and Embassy-related logistics, and Andrea Lichtenstein regarding the absence of an ICE charter. Id. ¶¶ 5, 10, 15-16, 41. None of those officials submitted a declaration. Indeed, this is not the first time Officer Chiriboga Villacis has made misrepresentations concerning the availability and flight plane of ICE plans traveling to Africa. *See* status report 4. At minimum, Officer Chiriboga Villacis is not a senior enough official to have personal knowledge of the information the court has ordered the government to provide.

The same problem appears in Defendants’ treatment of responsibility for the remaining steps. Instead of identifying the responsible official by name, title, and component, the declaration repeatedly substitutes generic references such as “appropriate personnel,” “Embassy personnel,” “appropriate authorities,” and “appropriate medical and operational personnel.” *Id.* ¶¶ 12, 17, 19-20, 37, 47-50. The Court specifically required more. Doc. 29 at 8-9.

This is not a technical defect. With the parole period now running and set to expire on November 11, 2026, the Court required specific, accountable reporting about who has done what, who remains responsible for each step, and when each step will be completed. Generalized secondhand descriptions do not satisfy that order.

## IV. Defendants' Representation Regarding Daily Coordination With Plaintiff's Counsel Is Inaccurate.

Defendants again represent that undersigned counsel is "engaging in daily check-ins and meetings with Petitioner's counsel." Doc. 30 at 1. That representation is inaccurate.

Plaintiff does not dispute that communications between counsel have occurred. But those communications have not consisted of the "daily check-ins and meetings" Defendants describe, and they have not amounted to contemporaneous coordination with Plaintiff's counsel as to each of the eleven remaining steps identified by the Court. Plaintiff's counsel's last direct contact with counsel for Defendants occurred on October 23, 2026, prior to the filing of Plaintiff's TRO, when Plaintiff's counsel informed Mr. Derek Faraldo that a plane had landed in Malabo and was presently on the ground in Malabo, despite the misrepresentations made in the government's status report the evening before. Plaintiff's counsel have had no further communications with Defendants since. Exhibit B, Declaration by Dana Camilleri.

That distinction matters because the Court expressly noted Defendants' representation concerning "daily check-ins and meetings with Plaintiff's counsel" and observed that coordination had improved, while also emphasizing that paragraph 5(e) requires "coordination as to each remaining step, not merely communication between counsel." Doc. 29 at 6, 8. Plaintiff therefore respectfully corrects the record: there have not been daily check-ins and meetings as represented, and the step-by-step contemporaneous coordination the Court ordered still has not occurred.

**Conclusion**

For those reasons, Plaintiff respectfully requests that the Court:

1. find that Status Update #6 does not comply with the reporting requirements set out in the Court's October 27, 2026 Order;
2. require Defendants to immediately supplement Status Update #6 to address, for each outstanding step, the information the Court previously ordered, including the responsible official by name, title, and component; the specific acts taken since the prior declaration; the expected completion date; and any specific impediment, the person or entity imposing it, and the actions being taken to remove it;
3. require Defendants to immediately confirm whether the government-contracted flight departing Arizona for Africa today is operated, contracted, or otherwise utilized by ICE or DHS; its destination and routing; when Defendants became aware of it; whether transporting Plaintiff aboard that aircraft was considered; and, if not, why not;

4. require Defendants to provide reporting that complies with the Court's personal-knowledge requirement, including declarations from officials with firsthand knowledge of any material facts otherwise being relayed secondhand; and
5. require Defendants to correct their characterization of coordination with Plaintiff's counsel and to begin the contemporaneous coordination regarding each outstanding step that the Court has already ordered.

Dated: October 28, 2026

Respectfully Submitted,

/s/*Jesse Evans-Schroeder*
Attorney for Petitioner

# TAB A

Join FlightAware Login

04:22PM EDT English (USA)

All ▾

Search for flight, tail, airport, or city

Forgot the flight number?

Sign Up

Products Industries ADS-B Flight Tracking Community Company

# VELUX13

**EXPECTED TO DEPART IN 50 MINUTES**

upload photo

**SJU**
**SAN JUAN, PUERTO RICO**

WED 28-OCT-2026
***05:12PM AST***

**CKY**
**CONAKRY, GUINEA**

THU 29-OCT-2026
***07:27AM GMT***

**10h 15m** total travel time

**VELUX13 flight schedule**

## Are you the operator of this aircraft?

Interested in seeing when your aircraft is powered on and watching it taxi on a live surface map? FlightAware Global is the ultimate aviation toolkit for aircraft owners and operators.

Discover FlightAware Global

**Show Features**



**Cookie Settings**

FlightAware uses cookies to keep our site free, enhance your experience, and to analyze performance and traffic. By clicking "Allow All", you agree to storing cookies on your device. **Privacy Statement**

Allow All




Get Alerts

## Flight Times

| Takeoff | Landing |
|---|---|
| ***05:12PM AST*** | ***07:27AM GMT (+1)*** |
| Scheduled 05:12PM AST | Scheduled 07:27AM GMT (+1) |

# Aircraft Details

updated a few seconds ago

## Aircraft Information

| | | |
|---|---|---|
| **Aircraft Type** | Gulfstream Aerospace Gulfstream V (twin-jet) (GLF5) | Photos |

## Flight Data

| | | |
|---|---|---|
| **Speed** | Filed: 548 mph | graph |
| **Altitude** | Filed: 41,000 ft | graph |
| **Distance** | Planned: 5,459 mi (Direct: 3,557 mi) | |
| **Route** | JETSS1 JUICE B520 ELOPO UB520 ANU 1700N/05600W EGIBO 1700N/04000W GARPO SVT UW35 SNT UW31 MOGSA POTOX UB600 KIRTI KIRTI1B | decode |

FlightAware

**Products & Services**
AeroAPI

**Company**
About

**Community**
Photos

FlightAware uses cookies to keep our site free, enhance your experience, and to analyze performance and traffic. By clicking "Allow All", you agree to storing cookies on your device. **Privacy Statement**

flight insights to all segments of the aviation industry.

FlightAware Aviator

Premium Subscriptions

FlightAware Global

FlightAware FBO Toolbox

FlightAware TV℠

GlobalBeacon

Webinars

Contact Us

FAQs

Download on the App Store

GET IT ON Google Play

---

English (USA)
© 2026 FlightAware Terms of Use Privacy Cookie Settings

FlightAware uses cookies to keep our site free, enhance your experience, and to analyze performance and traffic. By clicking "Allow All", you agree to storing cookies on your device. **Privacy Statement**

# TAB B

# AFFIDAVIT OF DANA M. CAMILLERI

I, Dana M. Camilleri, hereby declare as follows:

1. I have personal knowledge of the matters stated in this Affidavit (unless otherwise stated), and they are true and correct to the best of my knowledge.
2. I am an attorney licensed to practice and in good standing in the state of Virginia. I was previously employed at the U.S. Department of Justice, Civil Division, in the Office of Immigration Litigation, for seventeen years. Presently, I am employed full-time as a Senior Attorney with the law firm Green Evans-Schroeder, PLLC which represents A.M.A.S. who was ordered returned to the United States by this Court on October 6, 2026.
3. As part of my duties in this case, I have been monitoring DHS-related aircraft flight paths to Africa in order to ascertain whether the government has the means to facilitate A.M.A.S.'s return.
4. As already established, on October 23, 2026, a DHS contracted airplane with the tail number N703KW that left Alexandria, Louisiana on October 22, 2026, landed at Malabo Airport.
5. Upon learning this information, on October 23, 2026 at 8:30a.m. MST, I emailed counsel for Defendants, Mr. Derek Faraldo with the following message: "Derek, That flight did, in fact, just land in Malabo. I'm going to

alert the Judge, but you might want to immediately do something about this, because it sure looks like everyone just perjured themselves last night."

6. Mr. Faraldo responded at 11:53a.m.: "I certainly hope they wouldn't do that. I will alert them to provide more information about the allegedly recently cancelled charter flight. That seems reasonable. Thank you,"
7. Mr. Faraldo phoned me at 12:21 p.m. In that phone call, Mr. Faraldo offered to try to alert the relevant parties and attempt to get A.M.A.S. on the plane. He also joked that this is why he has a poster on his office saying "I'm just the messenger."
8. There have been no further communications between Plaintiff's counsel and Defendants' counsel since that call.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

s/Dana M. Camilleri__________________ 10/29/2026_______
Dana M. Camilleri Date